*In re* UTRERA

Docket No. 280531. Submitted June 4, 2008, at Detroit. Decided September 23, 2008, at 9:00 a.m.

Karen Russell petitioned the Macomb Circuit Court, Family Division, to terminate the parental rights of Anne L. Miller to a minor child for whom Russell had been acting as guardian ad litem. The petitioner alleged that the respondent had failed to comply with a court-structured transition from the child's limited guardianship placement plan, which resulted in a disruption of the parent-child relationship. The court, Tracey A. Yokich, J., adjourned the matter five times before asserting jurisdiction over the child, approximately one year after the initial petition was filed. The court ultimately terminated the respondent's parental rights pursuant to MCL 712A.19b(3)(d), for noncompliance with the transition plan, and MCL 712A.19b(3)(j), after finding a reasonable likelihood that the child would be harmed if returned to the respondent. The respondent appealed.

The Court of Appeals *held*:

1. The trial court erred by failing to conduct a timely adjudication under MCR 3.972(A) and by adjourning the proceedings without complying with MCR 3.923(G), which allows a court to adjourn trials or hearings in child protective proceedings only for good cause, for as short a time as necessary, after considering the best interests of the child. The term "good cause," which is not defined in the court rule, means "a legally sufficient or substantial reason," as previous panels have held in related contexts. There are no indications in the record that the court had such a reason for adjourning or that the court considered the best interests of the child. However, because this error was partially attributable to the respondent and the respondent was not prejudiced by the repeated adjournments, substantial justice does not require reversal.

2. The trial court erred by admitting hearsay evidence when considering a termination petition at the initial dispositional hearing; however, because there was sufficient clear and convincing, legally admissible evidence to support the termination decision, reversal is not required.

3. The respondent's assertion that she had good cause for

failing to comply with the limited guardianship placement plan was predicated on her mental illness, which was the very condition that impaired her ability to care for her child. Accordingly, it did not constitute a legally sufficient or substantial reason for noncompliance. Because the noncompliance disrupted the parent-child relationship, the trial court did not err by concluding that this statutory ground for termination was proven by clear and convincing, legally admissible evidence, as was the ground that there was a reasonable likelihood that the child would be harmed if returned to the respondent's home.

Affirmed.

1. PARENT AND CHILD — CHILD PROTECTIVE PROCEEDINGS — ADJOURNMENTS — GOOD CAUSE.

To support the adjournment of a trial or hearing in a child protective proceeding for good cause, there must be a showing of a legally sufficient or substantial reason for the adjournment (MCR 3.923[G]).

2. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — STATUTORY GROUNDS FOR TERMINATION OF PARENTAL RIGHTS — GUARDIANSHIPS — LIMITED GUARDIANSHIP PLACEMENT PLAN NONCOMPLIANCE — WORDS AND PHRASES — GOOD CAUSE.

The phrase "good cause," in the provision that allows the termination of parental rights for failure to substantially comply with a limited guardianship plan without good cause, means "without a legally sufficient or substantial reason" (MCL 712A.19b[3][d]).

*Karen Russell* for the petitioner.

*John J. Bologna* for the respondent.

Before: WHITBECK, P.J., and O'CONNELL and KELLY, JJ.

KELLY, J. Respondent mother appeals as of right the trial court order terminating her parental rights to her minor child pursuant to MCL 712A.19b(3)(d) (parent's noncompliance with a limited guardianship placement plan resulted in a disruption of the parent-child relationship) and (j) (reasonable likelihood that the child will be harmed if returned to parent). We affirm.

I. BASIC FACTS AND PROCEEDINGS

In March 2002, respondent filed a petition with the probate court requesting the appointment of Carolyn H. Roach as the limited guardian for the minor child pursuant to MCL 700.5205, because respondent lacked housing. Roach was the mother of respondent's boyfriend and acted as a surrogate grandmother to the minor child. The probate court granted the petition, and for the five years between the time the petition was granted and the time of the dispositional hearing, the minor child lived with Roach. The probate court ordered respondent to comply with a limited guardianship placement plan, which required respondent to visit the minor child seven times a week and participate in positive outings, have daily telephone contact with the child, provide transportation to school, attend all school conferences and nonemergency doctor and dentist appointments, pay for babysitting, and contribute $200 a month for room, board, and expenses and $100 a month for food.

In June 2004, respondent petitioned the probate court to terminate the guardianship of the minor child, but the petition was dismissed after respondent and Roach agreed to a consent order for visitation. This order provided for visitation every Saturday from 10:00 a.m. to 2:00 p.m. at Roach's home.

In June 2005, Roach suspended respondent's parenting time because she found that respondent's behavior was disruptive. Respondent then petitioned the probate court to terminate the guardianship. The court adopted a transition plan on August 8, 2005, requiring that respondent obtain a recommendation for a psychiatrist and receive a full psychiatric evaluation, including a comprehensive recommendation for treatment and medication. The plan provided that respondent should

comply with any medication and treatment recommendations and authorize the release of her medical and counseling records to the court, Laura Henderson (the minor child's therapist), Karen Russell (who, before acting as petitioner in this matter, had been the minor child's guardian ad litem), and respondent's attorney. The plan required respondent to participate in parenting classes and maintain adequate housing and a legitimate source of income. The plan also provided that Henderson should facilitate parenting time, following the receipt of respondent's psychiatric evaluation. The court ordered that the matter would be reviewed in six months.

Respondent failed to provide a report confirming that she had received a full psychiatric evaluation. On February 15, 2006, the probate court denied respondent's motion to terminate the guardianship, finding that respondent had failed to substantially comply with the transition plan. The probate court suspended respondent's parenting time and directed the guardian ad litem to take appropriate action in the juvenile court on behalf of the minor child.

The guardian ad litem, now petitioner in this matter,[1] filed the initial petition with the trial court in this matter on June 6, 2006, claiming that respondent had failed to comply with the court-structured transition plan, which resulted in a disruption in the parent-child relationship. Petitioner alleged that respondent had significant mental health issues, including bipolar disorder. Petitioner requested that the court take jurisdiction of the minor child. In an amended petition filed on August 21, 2006, petitioner requested the termination of respondent's parental rights pursuant to MCL

---

[1] The lower court record indicates that once Russell became the petitioner, a different guardian ad litem was appointed.

712A.19b(3)(d), (e), (g), and (j), at the initial disposition phase. The court adjourned the matter on five occasions before the case came before the court in June 2007, approximately a year after petitioner filed the initial petition.

The trial court then asserted jurisdiction over the child on the basis of the prior order of the probate court finding that respondent had failed to comply with the transition plan, MCL 712A.2(b)(3).[2] The court proceeded to the dispositional hearing. When the hearing began, respondent had not had visitation with the child for over two years.

Elaine Ball-Tyler, a guardianship investigator with the probate court, testified that she first had contact with respondent because the maternal grandparents had been appointed as limited guardians of respondent's two older children. During an investigation regarding the guardianship of the older children in August 2001, Ball-Tyler visited respondent's home and reported that it had a very unpleasant odor, and clothing, debris, papers, and materials from various projects were strewn about the house. Ball-Tyler first met the minor child who is the subject of this action in April 2002, when she conducted a guardianship investigation pursuant to a referral based on respondent's petition for guardianship in the instant case. The child, then almost five years old, was fearful, unaccustomed to sleeping alone, and frequently wet the bed. Ball-Tyler recalled that the child had poor communicative language skills, did not know how to hold a crayon, and did not know the alphabet, numbers, or colors. Ball-Tyler described the child as disheveled and indicated that she

---

[2] It appears that the trial court regarded the transition plan as a modified limited guardianship plan, and respondent does not challenge this consideration on appeal.

had not received most of her immunizations, had a drifting eye, and she required dental care.

Ball-Tyler asserted that respondent had not complied with the limited guardianship placement plan in that she had failed to visit the minor child seven times a week, attend medical appointments, pay for babysitting, contribute $200 a month for room and board, or contribute $100 a month for food. Respondent admitted that she had not provided any money for room, board, or food, claiming that she could not afford it.

Henderson, the child's therapist, opined that there was no bond between respondent and the minor child and that there had been a dramatic disruption in the parent-child relationship. There was a "huge gap of time" when respondent did not have any consistent contact with the child, and the child did not recall any positive memories of respondent. Henderson believed that, if the child were returned to respondent, she would most likely "show some significant regressive behavior fairly quickly." Henderson did not believe that, given respondent's history, the child would be psychologically safe if returned to respondent. During the two years Henderson had conducted therapy with the minor child, she saw a significant reduction in the child's anxiety and depression. Henderson asserted that the child was thriving in her environment, which was evidenced by her success in school and relationships with her friends. Ball-Tyler reported that the child was happy, secure, confident, and succeeding in school and involved in a variety of activities. Henderson believed that the child needed closure, consistency, and stability, and she asserted that termination was in the child's best interests.

Respondent's therapist, Sandra Fringer, testified that, during the preceding year, respondent had been

working on stress management techniques and had made improvement. Fringer stated that respondent's psychiatrist had reported that her condition was stable. However, Fringer testified that she understood that respondent had a psychiatric hospitalization seven months before the dispositional hearing began. Fringer was unable to offer an opinion with respect to respondent's ability to parent or maintain her own household. Respondent similarly claimed that she had been stable for a year before the dispositional hearing. In addition, respondent's friend, Sherry Pinch, testified that she believed that respondent could be a good parent to the minor child.

The minor child informed Henderson that, before she began living with Roach, respondent's older children had permitted her to jump out of a window onto a trampoline while respondent was at work and that they had once locked her out of the house. With respect to the trampoline incident, respondent admitted that she had left the minor child under the supervision of her older children, then ages 8 and 12, and she blamed them for the lapse in judgment. Respondent did not believe that her older children had locked the minor child out of the home.

Respondent admitted that, during the time the minor child had been living with Roach, she had been involved in two different relationships that exhibited poor judgment. In both of these relationships, she moved in with a man whom she had known for a short time and lived with him for one to two months. Both of these relationships involved incidents of domestic violence for which the police were summoned.

Respondent testified that she was unable to obtain the required psychiatric evaluation because the psychiatrists to whom she had been referred would not

accept her insurance. However, she admitted that she received a psychiatric evaluation in December 2005 and that the doctor recommended lithium. Respondent asserted that she was unable to take lithium because it caused seizures and that the doctor was unwilling to prescribe any other medications. Respondent did not know why she had not presented this evaluation to the court, but she explained that she had been having trouble or mental problems at the time and could not manage to obtain the records, even though she had an attorney.

The trial court terminated respondent's parental rights to the minor child pursuant to MCL 712A.19b(3)(d) (parent's noncompliance with a limited guardianship placement plan resulted in a disruption of the parent-child relationship) and (j) (reasonable likelihood that the child will be harmed if returned to parent). This appeal follows.

## II. ADJOURNMENTS

Respondent argues that the trial court erred by failing to conduct a timely adjudication pursuant to MCR 3.972(A). We agree that the trial court erred, but we conclude that this error did not affect the outcome of the proceedings and therefore does not warrant reversal.

### A. STANDARDS OF REVIEW

Generally, this Court reviews a ruling on a motion for a continuance for an abuse of discretion. *In re Jackson*, 199 Mich App 22, 28; 501 NW2d 182 (1993). However, because respondent failed to raise this issue before the trial court, it has not been properly preserved for appellate review. *In re NEGP*, 245 Mich App 126, 134; 626 NW2d 921 (2001). Our review is therefore limited to plain error affecting substantial rights. *People v*

*Carines*, 460 Mich 750, 763, 774; 597 NW2d 130 (1999). Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings. *Id.* at 763. When plain error has occurred, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant *or* when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *In re Osborne (On Remand, After Remand)*, 237 Mich App 597, 606; 603 NW2d 824 (1999) (quotation marks and citations omitted; alteration in original), citing *Carines*, *supra* at 763-764.

This issue also involves the interpretation of a court rule, which is a question of law that we review de novo. *In re AMAC*, 269 Mich App 533, 536; 711 NW2d 426 (2006); *In re BAD*, 264 Mich App 66, 72; 690 NW2d 287 (2004). We likewise review de novo the construction of the term "good cause." *In re FG*, 264 Mich App 413, 417; 691 NW2d 465 (2004).

### B. ANALYSIS

MCR 3.972(A) provides the following time requirements for conducting a trial after a petition has been filed:

> If the child is not in placement, *the trial must be held within 6 months after the filing of the petition unless adjourned for good cause under MCR 3.923(G)*. If the child is in placement, the trial must commence as soon as possible, but not later than 63 days after the child is removed from the home unless the trial is postponed:
>
> (1) on stipulation of the parties for good cause;
>
> (2) because process cannot be completed; or
>
> (3) because the court finds that the testimony of a presently unavailable witness is needed.

> When trial is postponed pursuant to subrule (2) or (3), the court shall release the child to the parent, guardian, or legal custodian unless the court finds that releasing the child to the custody of the parent, guardian, or legal custodian will likely result in physical harm or serious emotional damage to the child.
>
> If the child has been removed from the home, a review hearing *must be held within 182 days of the date of the child's removal* from the home, even if the trial has not been completed before the expiration of that 182-day period. [Emphasis added.]

Here, the 63-day requirement is inapplicable. The minor child was not "in placement" as she had been living with a limited guardian and was not in "foster care, a shelter home, a hospital, or a private treatment agency." MCR 3.903(C)(8). Rather, MCR 3.972(A) requires that the trial should have been conducted within six months of the date the petition was filed "unless adjourned for good cause under MCR 3.923(G)." Pursuant to MCR 3.923(G), "[a]djournments of trials or hearings in child protective proceedings should be granted only (1) for good cause, (2) after taking into consideration the best interests of the child, and (3) for as short a period of time as necessary."

"Good cause" is not defined by court rule. Therefore, we consult a dictionary and caselaw to assist us in ascertaining its meaning. *In re FG, supra* at 418; *Richards v McNamee*, 240 Mich App 444, 451; 613 NW2d 366 (2000). Black's Law Dictionary (8th ed) defines good cause as "[a] legally sufficient reason." See *Richards, supra* at 451-453 (discussing the dictionary definition of "good cause" in applying MCR 2.102[D]). In the context of MCR 3.615(B)(3),[3] this Court has defined good cause as "[a] legally sufficient reason" and

---

[3] MCR 3.615 governs proceedings pursuant to the Parental Rights Restoration Act (PRRA), MCL 722.901 *et seq*. MCR 3.615(B)(3) prohibits

"a substantial reason amounting in law to a legal excuse for failing to perform an act required by law." *In re FG*, *supra* at 419 (quotation marks and citation omitted). We adopt the same definition here, and hold that in order for a trial court to find good cause for an adjournment, "a legally sufficient or substantial reason" must first be shown. See *id.*

Petitioner filed the initial petition on June 6, 2006, and the trial court scheduled a pretrial hearing for June 21, 2006. On June 21, 2006, the court adjourned the hearing, and it was rescheduled for July 26, 2006. This hearing was also adjourned, and it was rescheduled for August 29, 2006. The lower court record does not contain any indication regarding the reasons for these two adjournments, and no legally sufficient or substantial reasons supporting these adjournments are apparent from the record. Moreover, there are no indications that the best interests of the child were considered. The trial court erred in repeatedly adjourning these proceedings. However, we conclude that this error does not require reversal in this case.

When the parties appeared for the August 29, 2006, hearing, respondent formally requested a hearing before a judge rather than a referee pursuant to MCR 3.912(B). The pretrial hearing was adjourned and rescheduled before a judge for September 19, 2006. No determination regarding good cause was made with respect to this adjournment. However, "[i]t is settled that error requiring reversal may only be predicated on the trial court's actions and not upon alleged error to which the aggrieved party contributed by plan or negligence." *Lewis v LeGrow*, 258 Mich App 175, 210; 670

---

the release of the contents of the court file maintained under the PRRA absent "good cause shown and only for a purpose specified in the order of the court."

NW2d 675 (2003). Given that this adjournment may be attributed to respondent, any error in this adjournment does not require reversal.

The court convened on September 19, 2006, and respondent requested a jury trial. The trial court scheduled a jury trial for January 4, 2007. Respondent's request for a jury trial likely constitutes a legally sufficient or substantial reason for this adjournment, but there are no indications that the best interests of the child were taken into consideration or that the $3\frac{1}{2}$-month period of adjournment was as short as necessary. See MCR 3.923(G)(2) and (3). However, given that this adjournment may also be attributed to respondent, any error that occurred does not require reversal. See *Lewis, supra* at 210.

At a December 18, 2006, motion hearing, respondent's counsel informed the court that respondent was hospitalized. In answer to the court's questions, the minor child's guardian ad litem asserted that the child was safe, in stable placement, and would not experience any potential prejudice or harm if the matter were adjourned. Respondent's doctor, who was contacted after the hearing, informed respondent's attorney that she was not expected to be able to participate in the proceedings scheduled for January 2007. The trial court entered an order adjourning the January 4, 2007, trial, ruling that good cause had been shown by respondent's hospitalization. The court rescheduled the jury trial for March 27, 2007. Given respondent's hospitalization and the expectation that she would be unable to participate in the proceedings, there was a legally sufficient or substantial reason for this adjournment. The trial court also took the best interests of the child into consideration, and there is no indication that the $2\frac{1}{2}$- month adjournment was longer than necessary. We therefore conclude that this adjournment was proper pursuant to MCR 3.972(A).

On March 12, 2007, respondent filed a stipulated waiver of jury trial, requesting a bench trial on March 27, 2007. The trial court scheduled a bench trial for March 27, 2007, and the parties appeared on that date. The guardian ad litem requested that the court transfer the case back to the referee for trial, and respondent waived her right to a trial before a judge and consented to transfer the case to the referee. The trial before the referee was scheduled to begin on June 26, 2007, and it commenced as scheduled. Given that respondent contributed to the delay by consenting to transfer the case back to the referee, any error in this adjournment does not require reversal. See *Lewis, supra* at 210.

The petition was filed on June 6, 2006, and the trial was not conducted until June 26, 2007, more than six months beyond the time limit provided in MCR 3.972(A). The high number of adjournments in this case was inappropriate. However, respondent has not claimed prejudice. She merely notes that memories and circumstances may change over time, and she does not assert any violation of due process guarantees.

With respect to the failure to comply with the requirement that a termination hearing on a supplemental petition be conducted within 42 days after the supplemental petition is filed, this Court has noted that the court rule and applicable statute provided no sanctions for the violation.[4] *In re Jackson, supra* at 28-29; *In re Kirkwood,* 187 Mich App 542, 545-546; 468 NW2d 280 (1991). The *Kirkwood* Court declined to include a

---

[4] In *In re Jackson, supra* at 28-29, and *In re Kirkwood,* 187 Mich App 542, 545-546; 468 NW2d 280 (1991), the Court applied former MCR 5.974(F)(1)(a). The rules governing juvenile proceedings have since been amended and renumbered, effective May 1, 2003. MCR subchapter 5.900 was moved to new MCR subchapter 3.900, and MCR 3.977 corresponds to former MCR 5.974. *In re JK,* 468 Mich 202, 209 n 17; 661 NW2d 216 (2003).

sanction in those provisions and held that "[s]uch a procedural defect, standing alone, will not cause us to dismiss the case or set aside the termination order." *Kirkwood, supra* at 546. MCR 3.902(A) provides that MCR 2.613 governs limitations on the correction of errors in proceedings involving juveniles. *In re TC*, 251 Mich App 368, 371; 650 NW2d 698 (2002). MCR 2.613(A) provides:

> An error in the admission or the exclusion of evidence, an error in a ruling or order, or an error or defect in anything done or omitted by the court or by the parties is not ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice.

MCR 3.972(A) does not provide a sanction for a violation of the six-month time limit, and, given the circumstances of this case, respondent could have actually benefited from the additional time because she could continue to work on establishing stability and resolving any barriers to reunification. See *In re Gazella*, 264 Mich App 668, 674; 692 NW2d 708 (2005); *In re Jackson, supra* at 29. Therefore, respondent was not prejudiced by the repeated and erroneous adjournments, and substantial justice does not require reversal.

### III. ADMISSIBILITY OF EVIDENCE

Respondent contends that the trial court improperly admitted hearsay evidence at the initial dispositional hearing, which resulted in the termination of her parental rights. We agree that hearsay was improperly admitted, but we conclude that there was sufficient clear and convincing, legally admissible evidence to support the trial court's decision to terminate respondent's parental rights.

### A. STANDARDS OF REVIEW

We review for an abuse of discretion a trial court's decision regarding the admission of evidence. *In re Archer*, 277. Mich App 71, 77; 744 NW2d 1 (2007). An abuse of discretion occurs when the trial court chooses an outcome that falls "outside the range of principled outcomes." *Barnett v Hidalgo*, 478 Mich 151, 158; 732 NW2d 472 (2007). When an evidentiary question involves a question of law, such as the interpretation of a statute or court rule, our review is de novo. *In re Archer, supra* at 77; *In re BAD, supra* at 72.

The statutory grounds for termination of parental rights must be proven by clear and convincing evidence. MCR 3.977(E)(3). "If the court finds that there are grounds for termination of parental rights, the court shall order termination of parental rights . . . unless the court finds that termination of parental rights to the child is clearly not in the child's best interests." MCL 712A.19b(5). We review for clear error a trial court's decision to terminate parental rights and, if appropriate, its decision regarding whether termination is contrary to the child's best interests. MCR 3.977(J); *In re JK*, 468 Mich 202, 209; 661 NW2d 216 (2003). A decision is clearly erroneous if, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re JK, supra* at 209-210.

### B. PROTECTIVE PROCEEDINGS

Child protective proceedings consist of two distinct phases: the trial, also known as the adjudicative phase, and the dispositional phase. *In re AMAC, supra* at 536. During the adjudicative phase, which occurs first, the

trial court determines whether it may exercise jurisdiction over the minor child pursuant to MCL 712A.2(b). *In re AMAC, supra* at 536. If the court conducts a trial, "the rules of evidence for a civil proceeding and the standard of proof by a preponderance of evidence apply . . . notwithstanding that the petition contains a request to terminate parental rights." MCR 3.972(C)(1); *In re AMAC, supra* at 536. If the court acquires jurisdiction over the child, the dispositional phase follows, at which the trial court determines "what action, if any, will be taken on behalf of the child." *In re AMAC, supra* at 536-537; see also MCR 3.973(A). The dispositional phase must be conducted immediately after the adjudicative hearing or after proper notice has been given. *In re AMAC, supra* at 538. Unlike the adjudicative phase, the Michigan Rules of Evidence do not generally apply at an initial dispositional hearing. MCR 3.973(E)(1); *In re AMAC, supra* at 537.

The trial court may order termination at an initial dispositional hearing under certain circumstances. MCL 712A.19b(4); *In re CR*, 250 Mich App 185, 201; 646 NW2d 506 (2002). MCR 3.977(E) provides the procedural requirements for terminating parental rights at an initial dispositional hearing as follows:

The court shall order termination of the parental rights of a respondent at the initial dispositional hearing held pursuant to MCR 3.973, and shall order that additional efforts for reunification of the child with the respondent shall not be made, if

(1) the original, or amended, petition contains a request for termination;

(2) at the trial or plea proceedings, the trier of fact finds by a preponderance of the evidence that one or more of the grounds for assumption of jurisdiction over the child under MCL 712A.2(b) have been established;

(3) at the initial disposition hearing, the court finds on the basis of *clear and convincing legally admissible evidence* that had been introduced at the trial or plea proceedings, or that is introduced at the dispositional hearing, that one or more facts alleged in the petition:

(a) are true, and

(b) establish grounds for termination of parental rights under MCL 712A.19b(3)(a), (b), (d), (e), (f), (g), (h), (i), (j), (k), (*l*), (m), or (n);

unless the court finds by clear and convincing evidence, in accordance with the rules of evidence as provided in subrule (G)(2), that termination of parental rights is not in the best interests of the child. [Emphasis added.]

Petitioner sought termination of respondent's parental rights in the amended petition, and the trial court assumed jurisdiction over the child on the basis of the prior order of the probate court that stated that respondent had failed to comply with the limited guardianship plan, MCL 712A.2(b)(3). Therefore, clear and convincing, legally admissible evidence was required to establish the grounds for termination.

We reject petitioner's argument that *In re Gilliam*, 241 Mich App 133; 613 NW2d 748 (2000), and *In re Snyder*, 223 Mich App 85; 566 NW2d 18 (1997), dictate that the Michigan Rules of Evidence do not apply. Both cases involved former MCR 5.974(E),[5] which governed the termination of parental rights based on changed circumstances. See *Gilliam, supra* at 136-138; *Snyder, supra* at 89-90. Given that petitioner did not seek termination on the basis of changed circumstances, MCR 3.977(F) does not apply, and petitioner's reliance on *Snyder* and *Gilliam* is misplaced. Rather, petitioner sought termination of respondent's parental rights at

---

[5] Former MCR 5.974(E) corresponds to current MCR 3.977(F). See *In re JK, supra* at 209 n 17.

the initial disposition in the amended petition, and MCR 3.977(E) provides that clear and convincing, legally admissible evidence was required.

### C. HEARSAY

Respondent claims that there were repeated instances of hearsay pertaining to statements Roach made about respondent, statements the minor child made to Henderson, and statements contained in police reports. Respondent also indicates that Ball-Tyler improperly testified about statements made by the maternal grandparents. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Hearsay is inadmissible unless the rules of evidence provide otherwise. MRE 802.

Henderson testified that the minor child told her that she was afraid of respondent because respondent yelled, threw things at her boyfriend, and engaged in incidents of domestic violence with him. Ball-Tyler testified that the minor child told her that she did not want to have telephone calls or visitation with respondent, that the visits were not good, that respondent made her feel afraid, that she cried the night before a visit was scheduled to occur, and that she did not think respondent would ever get well. Ball-Tyler also related that the child said that respondent used "bad words," asked her to keep secrets, and threatened not to let the minor child see Roach or Roach's family if she were returned to respondent. Although these statements constitute hearsay, they are admissible as exceptions because they pertain to the minor child's then-existing mental or emotional condition. Statements that the declarant is afraid may be admissible pursuant to MRE 803(3) to

prove the declarant's state of mind. *People v Bauder*, 269 Mich App 174, 188-189; 712 NW2d 506 (2005); *People v Ortiz*, 249 Mich App 297, 307-310; 642 NW2d 417 (2002). These statements were relevant pursuant to MRE 401 because they tended to show that the parent-child relationship had been disrupted under MCL 712A.19b(3)(d), which was at issue.

Ball-Tyler also testified that she had reviewed multiple police reports regarding domestic violence involving respondent; two reports involved respondent committing acts of domestic violence, and one involved her being the alleged victim of such violence. Ball-Tyler conducted an investigation in response to the June 2005 petition to terminate the guardianship, and although respondent had reported that she was living with the maternal grandparents, Ball-Tyler was unable to schedule a home visit by contacting their residence. Ball-Tyler's testimony demonstrated that respondent was not living with her parents; rather, it indicated that respondent was living at other locations at various times. Ball-Tyler's testimony was offered to demonstrate that respondent had not been consistently living with the maternal grandparents, and not for the truth of the matter asserted, i.e., that respondent was living with various boyfriends, was violent, or was involved in abusive relationships. Therefore, this testimony does not constitute hearsay pursuant to MRE 801(c). See *Int'l Union, United Automobile, Aerospace & Agricultural Implement Workers of America v Dorsey (On Remand)*, 273 Mich App 26, 35-36; 730 NW2d 17 (2006). These reports themselves were not admitted into evidence. Although Ball-Tyler may have offered more testimony than necessary to establish respondent's residence, respondent admitted that, during the time the minor child was living with Roach, respondent had been involved in two relationships in which incidents of

domestic violence occurred and the police were summoned. Respondent testified regarding other domestic violence incidents as well, further elaborating on Ball-Tyler's testimony.

Ball-Tyler asserted that the maternal grandparents had told her that they did not believe respondent could manage her own residence or was capable of being on her own and that they were concerned about the stability and consistency of her behavior over time. Because these statements were offered to prove the truth of the matter asserted, i.e., that respondent was not able to manage her own residence or live on her own and that her behavior was not stable or consistent over time, they constitute hearsay. MRE 801(c). Ball-Tyler also asserted that Henderson told her that the visits with respondent were causing stress and anxiety for the minor child and were counterproductive. Ball-Tyler stated that Roach reported being frustrated with respondent because of the problems during the visits with the minor child and respondent's inappropriate actions. Henderson testified that the child expressed that she was afraid that respondent would take her away from Roach, whom she regarded as her grandmother. These statements constitute hearsay because they were offered for the truth of the matter asserted, i.e., that respondent's visits with the child were not productive. MRE 801(c).

Ball-Tyler testified that Roach told her that respondent rarely arrived at 10:00 a.m. for the scheduled visits with the minor child and that the child was attempting to avoid telephone calls with respondent. To the extent that these statements were offered to prove the truth of the matter asserted, i.e., that respondent was not timely for her visits, they constitute hearsay. MRE 801(c). However, respondent acknowledged that she had not

arrived on time for her weekly visitation with the minor child and admitted that she did not believe it was important to be on time.

Ball-Tyler stated that the maternal grandparents had informed her that respondent's two older children had "great parental responsibility" for the minor child. Henderson testified that the child had similarly told her that respondent's older children were frequent caregivers and that the child had identified three incidents involving the older children: they permitted her to jump out of a window onto a trampoline, they locked her out of the house, and they permitted her to eat dog food. These statements constitute hearsay because they were offered for the truth of the matter asserted, i.e., that respondent left the minor child in the care of her older children. MRE 801(c). However, with respect to the trampoline incident, respondent admitted that she had left the minor child in the care and supervision of her older children while she was at work. Respondent also asserted that she did not believe that her older children had locked the minor child out of the home.

Although the trial court abused its discretion by allowing the admission of extensive hearsay statements, detailed above, to prove the statutory bases for termination of respondent's parental rights, MCR 3.977(E)(3), reversal is not necessarily required. To the extent that respondent testified regarding the substance of hearsay statements that were improperly admitted, she must demonstrate that substantial justice requires us to reverse the order terminating her parental rights. MCR 2.613(A); MCR 3.902(A); *In re TC, supra* at 371. If petitioner provided clear and convincing, legally admissible evidence that respondent substantially failed, without good cause, to comply with the limited guardianship placement plan and that this

noncompliance resulted in a disruption of the parent-child relationship, MCL 712A.19b(3)(d), or that there was a reasonable likelihood that the child would be harmed if returned to respondent, MCL 712A.19b(3)(j), reversal is not warranted. See *In re CR, supra* at 206-208.

### D. MCL 712A.19b(3)(d)

The trial court terminated respondent's parental rights pursuant to MCL 712A.19b(3)(d), which provides:

> The child's parent has placed the child in a limited guardianship under section 5205 of the estates and protected individuals code, 1998 PA 386, MCL 700.5205, and *has substantially failed, without good cause, to comply with a limited guardianship placement plan* described in section 5205 of the estates and protected individuals code, 1998 PA 386, MCL 700.5205, regarding the child to the extent that the noncompliance has resulted in a disruption of the parent-child relationship. [Emphasis added.]

Again, the term "good cause" is not defined in the statute. As discussed earlier, this Court defines "good cause" as "a legally sufficient or substantial reason," and we adopt the same definition here. Termination is therefore appropriate pursuant to MCL 712A.19b(3)(d) if a respondent fails to substantially comply with a limited guardianship plan without a "legally sufficient or substantial reason," and this noncompliance results in a disruption of the parent-child relationship.

The probate court expressly found "that there has been no substantial compliance by the natural mother with the Transition Plan . . . ." Henderson testified at the dispositional hearing that she never received respondent's psychiatric evaluation, which supports the probate court's finding that respondent failed to comply

with the transition plan. However, respondent asserted that she had difficulty obtaining a psychiatric evaluation because she could not find a psychiatrist who accepted her insurance. Although much of the evidence disproving this claim was improperly admitted hearsay,[6] respondent's own testimony was sufficient to demonstrate that her noncompliance with the transition plan was without good cause. Respondent admitted that she had received a psychiatric evaluation in December 2005, but she explained that, because of her mental problems at the time, she could not manage to obtain the records, even though she was represented by counsel. Because respondent's asserted cause for noncompliance with the transition plan, i.e., her mental illness, is the very condition that impairs her ability to care for the child, it cannot constitute a legally sufficient or substantial reason. The absence of good cause was established by clear and convincing, legally admissible evidence.

Respondent's failure to comply with the transition plan resulted in a further disruption of the parent-child relationship, which was already severely disrupted by that time. Roach suspended respondent's parenting time in June 2005, and the probate court suspended respondent's parenting time in February 2006 because respondent had failed to comply with the transition plan. Henderson did not facilitate visitation because she never received a psychiatric evaluation, and visits were never reinstated. Visitation was ultimately suspended when petitioner sought termination of respondent's parental rights in August 2006. See MCL 712A.19b(4).

---

[6] For example, Ball-Tyler testified that a previous therapist of respondent informed her that she had advised respondent of several psychiatrists who would accept her insurance and perform a psychiatric evaluation. Respondent does not challenge the admission of this testimony.

Thus, the eight-month gap in visits from the time of respondent's psychiatric evaluation in December 2005 until the filing of the termination petition in August 2006 is wholly attributable to respondent's failure to comply with the transition plan. This clearly constitutes a disruption in the parent-child relationship, and termination on this ground was proven by clear and convincing, legally admissible evidence.

### E. MCL 712A.19b(3)(j)

Given our conclusion that the grounds for termination pursuant to MCL 712A.19b(3)(d) were established by clear and convincing evidence, it is not necessary to address the second ground for termination pursuant to MCL 712A.19b(3)(j). *In re Trejo Minors*, 462 Mich 341, 360; 612 NW2d 407 (2000). We nonetheless provide analysis as follows.

The trial court also terminated respondent's parental rights pursuant to MCL 712A.19b(3)(j) because it found that there was a reasonable likelihood that, given respondent's conduct or capacity, the child would be harmed if returned to respondent's home. Respondent suffers from bipolar disorder, and she testified that, from 1994 until July 2006, she was not stable. Respondent admitted that she made poor decisions during the time the minor child lived with Roach, including living with two abusive men whom she knew for very short periods before beginning to live together. Respondent continued to exhibit poor judgment at the dispositional hearing, for example, by testifying that she felt it had been appropriate to leave the minor child in the care of her older children, who were then 8 and 12 years old, while respondent was at work. Respondent attributed the trampoline incident to poor judgment on the part of her older children, but not herself for leaving them in

charge of the minor child. Respondent also indicated that she did not believe that her older children had locked the minor child out of the house. Respondent acknowledged that she might have disappeared between November 2003 until May 2004 and failed to remember it. She testified that she had been physically and mentally unable to visit the minor child for the entire four-hour visitation periods that were allowed during part of the limited guardianship. She answered affirmatively when asked whether a seven-year-old was supposed to realize that her mother just could not come to visit.

Fringer could not provide an opinion with respect to respondent's ability to maintain a household on her own or on her ability to parent. She indicated that, after six additional months of therapy, respondent could "possibly" care for herself without therapy and could improve enough to potentially parent. Fringer also testified that respondent had a psychiatric hospitalization in December 2006, contradicting respondent's own testimony that she was hospitalized at Oakland General Hospital for a heart attack and later transferred to the Detroit Behavioral Institute for three or four days for observation of her heart. Respondent herself testified that she had been stable since July 2006. Any rational evaluation of the evidence must take into account respondent's lengthy history of instability as relevant to her current capacity to provide proper care for the child. Respondent's lengthy period of instability, compared to the recent period of stability reported by herself and Fringer, in combination with her own testimony indicating a continuing lack of judgment, insight, and empathy for the child, provided sufficient evidence to support termination pursuant to MCL 712A.19b(3)(j). Thus, despite the extensive hearsay erroneously received by the trial court, we conclude that

the trial court's decision to terminate was supported by clear and convincing, legally admissible evidence. MCR 3.977(E)(3).

Affirmed.