# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* HERNANDEZ/BRIGHT, Minors.

UNPUBLISHED
September 18, 2018

No. 339957
St. Joseph Circuit Court
Family Division
LC No. 2007-000894-NA

Before: MURRAY, C.J., and CAMERON and LETICA, JJ.

PER CURIAM.

Respondent-mother appeals as of right the order terminating her parental rights to her three children pursuant to MCL 712A.19b(3)(g)[1] (failure to provide proper care and custody) and (j) (reasonable likelihood of harm if child is returned to parent). We affirm.

Respondent-mother first argues that her plea of admission was defective because the trial court failed to adequately advise her of her rights, as required by MCR 3.971(B), or find on the record that her plea was understandingly and voluntarily made, as required by MCR 3.971(C)(1). We decline to address this issue because it constitutes an impermissible collateral attack on the trial court's adjudication. "Ordinarily, an adjudication cannot be collaterally attacked following an order terminating parental rights." *In re SLH*, 277 Mich App 662, 668; 747 NW2d 547 (2008). Said differently, a respondent may not challenge the trial court's adjudication, meaning its exercise of jurisdiction, "when a termination occurs following the filing of a supplemental petition for termination after the issuance of the initial dispositional order." *Id*. Matters affecting the court's exercise of its jurisdiction, as opposed to a complete want of jurisdiction, may be challenged only on direct appeal of the jurisdictional decision, not by collateral attack in a subsequent appeal of an order terminating parental rights. *In re Hatcher*, 443 Mich 426, 438-440; 505 NW2d 834 (1993). Because respondent-mother's claim of error challenges the court's

---

[1] MCL 712A.19b(3)(g) has been substantively amended, effective June 12, 2018. See 2018 PA 58. Under the version of the statute in effect at the time of these proceedings, parental rights could be terminated if "[t]he parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." MCL 712A.19b(3)(g), as amended by 2012 PA 386.

exercise of jurisdiction in an appeal from a later dispositional order, rather than in a direct appeal from the adjudication, review of this issue is precluded. *In re SLH*, 277 Mich App at 668.

Respondent-mother next argues that the trial court erred in terminating her parental rights to the minor children because she was not offered appropriate accommodations in light of her disabilities, in violation of the Americans with Disabilities Act (ADA), 42 USC 12101 *et seq*. We disagree.

A respondent in a child protective proceeding claiming that the trial court failed to accommodate her disability under the ADA must raise such a claim in a timely manner so that any reasonable accommodations can be made. *In re Terry*, 240 Mich App 14, 26; 610 NW2d 563 (2000).[2] When a respondent fails to make a timely claim that the accommodations were inadequate to her particular needs, the respondent's "sole remedy is to commence a separate action for discrimination under the ADA." *Id*. When a respondent does not raise a challenge to the nature of the services or accommodations offered until closing argument at the hearing regarding the petition to terminate her parental rights, such an argument is "too late in the proceedings to raise the issue." *Id*. at 27. In this case, mother failed to raise a timely challenge to the trial court's accommodation of her hearing deficit and has therefore failed to preserve review of this argument on appeal.

Because respondent-mother's issue on appeal is unpreserved, this Court's "review is therefore limited to plain error affecting substantial rights." *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011) (quotation marks and citation omitted). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re Utrera*, 281 Mich App at 9. Finally, reversal under plain error review "is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant *or* when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. (quotation marks and citation omitted; alteration in original).

---

[2] In *In re Hicks*, 500 Mich 79, 88; 893 NW2d 637 (2017), the Michigan Supreme Court categorized the language from *Terry* as dictum and noted that panels of this Court have "treated this language as the rule since the *Terry* decision." The Supreme Court expressed skepticism regarding such a "categorical rule" but ultimately did not decide the timeliness issue because neither the petitioner nor the minor children raised a timeliness issue in the trial court. *Id*. at 88-89. See also *id*. at 89 n 9 ("Certainly, a service plan deficient on its face should produce an immediate objection. But it will not always be apparent at the time a service plan is adopted, or even soon afterward, that the service plan is insufficient, either in design or execution, to reasonably accommodate a parent's disability."). Thus, despite the Court's questioning of the categorical rule, *In re Hicks* did nothing to displace the notion that a parent must timely object to the adequacy of services.

In enacting the ADA, Congress stated that "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals." 42 USC 12101(a)(7). With these goals in mind, the ADA provides, in pertinent part:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity. [42 USC 12132.]

> A "qualified individual with a disability"

> means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity. [42 USC 12131(2).]

The ADA defines a "disability" as "a physical or mental impairment that substantially limits one or more major life activities of such individual," "a record of such an impairment," or "being regarded as having such an impairment . . . ." 42 USC 12102(1). For purposes of the ADA, "major life activities" include "functions such as caring for oneself, performing manual tasks, walking, seeing, *hearing*, speaking, breathing, learning, and working." *Stevens v Inland Waters, Inc*, 220 Mich App 212, 217; 559 NW2d 61 (1996) (emphasis added). See also 42 USC 12102(2)(A) (providing that hearing is a major life activity). Therefore, respondent-mother's hearing deficit clearly qualifies as a disability for purposes of the ADA.

In this case, respondent-mother's hearing deficit was apparent from the very first hearing. At the May 25, 2016 preliminary hearing, the referee adjourned the hearing to another date because respondent-mother's hearing deficit rendered her unable to adequately participate in the court proceedings through the county jail's video system. At the June 23, 2016 pretrial conference, the court was informed that respondent-mother was able to lip-read, and the court encouraged respondent-mother to let counsel and the trial court know if she was unable to understand what was happening. At that same hearing, respondent-mother's attorney mentioned respondent-mother's level of hearing impairment and inquired whether respondent-mother would receive the trial court's orders in writing. The trial court indicated that a written order would be entered the following day. At the September 15, 2016 hearing, respondent-mother's counsel indicated that respondent-mother was unable to use the trial court's headphones with her cochlear implant but assured the trial court that respondent-mother could lip-read. Respondent-mother's counsel simply asked other counsel to slow down so that respondent-mother would have a chance to read their lips. The trial court also inquired whether respondent-mother knew sign language and noted its willingness to provide a sign-language interpreter, but respondent-mother's counsel indicated that she did not know sign language. However, the court was assured, once again, that respondent-mother could read lips.

In summary, respondent-mother and her counsel repeatedly informed the trial court that respondent-mother could lip-read, and simply asked the trial court and the other attorneys in the courtroom to slow their normal patterns of speech and to look directly at respondent-mother when speaking. In addition, respondent-mother and her counsel asked to receive the trial court's orders in writing. Respondent-mother did not ask for any other type of accommodation for her hearing deficit and declined other available options. On appeal, respondent-mother does not identify any potential accommodation that the trial court could have provided in order to increase her ability to participate in and understand the proceedings. Furthermore, respondent-mother does not identify any accommodation that she requested but did not receive. The record indicates that the trial court did explore how best to accommodate respondent-mother's hearing deficit and made specific findings that respondent-mother's hearing deficit was accommodated under the ADA. We conclude that respondent-mother cannot demonstrate plain error affecting her substantial rights. Therefore, respondent-mother is not entitled to relief on this issue.

Affirmed.

/s/ Christopher M. Murray
/s/ Thomas C. Cameron
/s/ Anica Letica