*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* BERRYMAN/HURD/MORGAN/MORGAN-HURD, Minors.

FOR PUBLICATION
March 23, 2026
11:42 AM

No. 374775
Wayne Circuit Court
Family Division
LC No. 2023-001117-NA

*In re* M. K. BERRYMAN, Minor.

No. 374776
Wayne Circuit Court
Family Division
LC No. 2023-001117-NA

Before: RICK, P.J., and YATES and MARIANI, JJ.

MARIANI, J.

In these consolidated appeals,[1] respondents appeal by right the trial court's order terminating their parental rights to their minor child, MKB, pursuant to MCL 712A.19b(3)(b)(*ii*) (failure to prevent injury or abuse to child or sibling), (g) (failure to provide proper care and custody), (j) (reasonable likelihood of harm), and (k)(*iv*) (parent abused child or sibling causing serious impairment). Respondent-mother also appeals by right the same order terminating her parental rights to her minor children, NSM, SLM, RMH, and RDH, on the same grounds.[2]

---

[1] *In re Berryman/Hurd/Morgan/Morgan-Hurd Minors*, unpublished order of the Court of Appeals, entered March 19, 2025 (Docket Nos. 374775; 374776).

[2] SLM's father was also a respondent in the proceedings below and his parental rights to SLM were terminated under MCL 712A.19b(3)(a)(*ii*) (desertion) by the trial court's order. Neither NSM's father nor RMH's and RDH's father was a respondent in the proceedings below. None of

-1-

Respondents' parental rights were terminated at initial disposition, without reasonable efforts made to reunify the children and family. The law permits termination in this manner, but "only in rare circumstances provided by statute." *In re Barber/Espinoza*, ___ Mich ___, ___; ___ NW3d ___ (2025) (Docket No. 167745); slip op at 3. Here, the trial court failed to properly determine that such circumstances existed in this case—a plain error that affected respondents' substantial rights. Accordingly, we vacate the trial court's termination order and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

Petitioner, the Department of Health and Human Services (DHHS), became involved in this case in June 2023 after then-21-month-old MKB was shot by his then-six-year-old cousin, KM, while in respondents' care. During its investigation, Children's Protective Services (CPS) determined that, while respondent-father was working in the backyard, respondent-mother left MKB, KM, and her other niece and nephew in the home with a 14-year-old babysitter so she could briefly go to a neighbor's house.[3] Shortly before leaving the home, respondent-mother placed an unsecured, loaded handgun on a high shelf in the living room. According to respondent-mother, she ordinarily kept the gun in a lockbox under her bed, but the lock was broken, so she moved the gun to a high shelf in an effort to keep the children from finding it. Within 10 to 15 minutes of respondent-mother leaving, KM found the unsecured gun, used a chair to climb up to the high shelf, grabbed the gun, and fired it, hitting MKB. MKB was immediately driven to the hospital. He survived, but required reconstructive surgery to the left side of his nose, cheek, and shoulder due to the injuries he sustained.

DHHS subsequently filed a petition requesting that the trial court remove the children from respondents' care, take jurisdiction over the children, and terminate respondents' parental rights at initial disposition. Following a preliminary hearing in July 2023, the trial court authorized the petition, removed the children from respondents' care, and granted respondents supervised parenting time. DHHS did not allege in its petition that aggravated circumstances existed to justify termination at initial disposition, nor did DHHS argue as much at the preliminary hearing. Nonetheless, the court indicated in its corresponding written order that it found that reasonable efforts toward reunification were not required because aggravated circumstances existed. As aggravated circumstances, the court listed "[i]mproper supervision" and "unfit home."

The trial court thereafter held a two-day bench trial—the first day occurring in November 2023 and the second in February 2024—to determine whether there was a sufficient basis to assume jurisdiction and to support the statutory grounds for termination alleged in DHHS's petition. At the conclusion of the trial, the court found that statutory grounds for jurisdiction under

---

these individuals are involved in this appeal. Accordingly, "respondent-father" refers to MKB's father.

[3] Respondent-mother's niece and two nephews, including KM, were residing with respondents pursuant a safety plan after respondent-mother's sister was arrested, and they were in respondents' home at the time of the shooting. Respondent-mother's other children—NSM, SLM, RMH, and RDH—were visiting a family friend in Florida at that time.

MCL 712A.2(b)(1) (failure to provide proper care or custody) and (2) (unfit home environment) had been established by more than a preponderance of the evidence, and that statutory grounds for termination under MCL 712A.19b(3)(b)(*ii*), (g),(j), and (k)(*iv*) had been established by clear and convincing evidence.[4]

Between June and December 2024, the trial court conducted a multi-day best-interests hearing to determine whether termination of respondents' parental rights at initial disposition was in the children's best interests. After considering the evidence and testimony provided by the parties, the court concluded that it was. The trial court subsequently issued an order terminating respondent's parental rights as described above. This appeal followed.

## II. DISCUSSION

On appeal, respondents argue, among other things, that the trial court clearly erred by finding that there were statutory grounds for termination of their parental rights at initial disposition because they had never previously had their children removed or had a petition filed against them and because the shooting incident, although tragic, was an accident. In making this argument, respondent-mother emphasizes that she was never provided with a case service plan by DHHS and that she, on her own accord, found and consistently participated in services she believed would help prevent a similar incident from occurring in the future. In response to this point, DHHS asserts that it was not required to provide respondents with a case service plan or otherwise make reasonable efforts toward reunification because the shooting incident constituted an aggravated circumstance that relieved DHHS of its obligations in that regard. We disagree with DHHS's position. The trial court plainly erred by terminating respondents' parental rights at initial disposition instead of ordering that reasonable efforts toward reunification be made, as none of the statutory exceptions excusing such efforts were properly found to exist.

We review the trial court's application of statutes de novo. *In re Walters*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 369318); slip op at 3. In doing so, we look first to the statute's plain language to determine its meaning, and we decline to engage in further construction or interpretation if the plain language of the statute is unambiguous. *Id*. at ___; slip op at 3. We generally give words their plain and ordinary meanings "unless otherwise defined" by statute. *LeFever v Matthews*, 336 Mich App 651, 662; 971 NW2d 672 (2021) (quotation marks and citations omitted). "Only when an ambiguity exists in the language of the statute is it proper for a court to go beyond the statutory text to ascertain legislative intent." *Walters*, ___ Mich App at ___; slip op at 3 (quotation marks and citation omitted).

Because, however, this issue was not raised before the trial court, it is unpreserved and reviewed for plain error affecting substantial rights. *Id*. at ___; slip op at 7. To obtain appellate relief under the plain-error standard of review, a respondent first must show: (1) an error occurred, (2) the error was clear or obvious, and (3) the error affected substantial rights. *Id*. at ___; slip op at 7. "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re MJC*, 349 Mich App 42, 48; 27 NW3d 122 (2023) (quotation

---

[4] The court did not issue an order of adjudication assuming jurisdiction until December 2024.

marks and citation omitted). After the respondent has satisfied these requirements, "an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted when the plain, forfeited error seriously affected the fairness, integrity or public reputation of judicial proceedings." *In re Pederson*, 331 Mich App 445, 463; 951 NW2d 704 (2020) (quotation marks, citations, and ellipses omitted).

"In most circumstances, . . . DHHS has an affirmative duty to make reasonable efforts to achieve reunification before a court may terminate parental rights," and it is "only in rare circumstances provided by statute" that a court may "hold a combined adjudicative and dispositional hearing in which parental rights may be terminated at the initial dispositional hearing." *Barber/Espinoza*, ___ Mich at ___; slip op at 3. Those circumstances include when "[t]here is a judicial determination that the parent has subjected the child to aggravated circumstances as provided in [MCL 722.638(1) and (2)]." MCL 712A.19a(2)(a). As is relevant here, such aggravated circumstances exist—and DHHS must request termination at initial disposition in its petition—when DHHS determines that (1) "a parent, guardian, or custodian, or a person who is 18 years of age or older and who resides for any length of time in the child's home, has abused the child or a sibling of the child," MCL 722.638(1)(a), and (2) the respondent-parent "is a suspected perpetrator or is suspected of placing the child at an unreasonable risk of harm due to the parent's failure to take reasonable steps to intervene to eliminate that risk," MCL 722.638(2). See also MCL 712A.19a(2)(a); *Barber/Espinoza*, ___ Mich at ___; slip op at 9 (explaining that, "to conclude that aggravated circumstances exist that excuse the requirement of reasonable efforts toward reunification, a trial court must make findings consistent with both MCL 722.638(1) and MCL 722.638(2)").

Accordingly, to determine whether aggravated circumstances exist under MCL 722.638(1)(a), a court must first determine whether an individual listed in that statutory provision "has abused the child or a sibling of the child." See also *Barber/Espinoza*, ___ Mich at ___; slip op at 9-10. For purposes of child-protective proceedings, "child abuse" is defined, in relevant part, as "harm or threatened harm to a child's health or welfare that occurs through nonaccidental physical or mental injury, sexual abuse, sexual exploitation, or maltreatment, by a parent" or other statutorily identified individual. MCL 722.622(g). "But child abuse perpetrated by a listed individual is not independently sufficient to satisfy the requirements of MCL 722.638(1)." *Barber/Espinoza*, ___ Mich at ___; slip op at 11. The abuse committed by a listed individual must have also "included" at least one of the following:

> (*i*) Abandonment of a young child.

> (*ii*) Criminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate.

> (*iii*) Battering, torture, or other serious physical harm.

> (*iv*) Loss or serious impairment of an organ or limb.

> (*v*) Life threatening injury.

(*vi*) Murder or attempted murder.   [MCL 722.638(1)(a); see also *Barber/Espinoza*, ___ Mich at ___; slip op at 11.]

The listed individual perpetrating the abuse need not have also been the perpetrator of a circumstance listed in MCL 722.638(1)(a); the statute is still satisfied if a different individual committed one of the six delineated circumstances, so long as that circumstance was included in the abuse perpetrated by the listed individual. *Barber/Espinoza*, ___ Mich at ___; slip op at 11-12.

Upon determining that these requirements under MCL 722.638(1)(a) are met, the court must then also conclude MCL 722.638(2) is satisfied before excusing DHHS from making reasonable efforts to reunify the family and considering termination at initial disposition.  See *id.* at ___; slip op at 9, 12; see also *In re Smith-Taylor*, 509 Mich 935, 935 (2022) ("Under MCL 712A.19a(2)(a), there must be a 'judicial determination that the parent has subjected the child to aggravated circumstances' before [DHHS] is excused from making reasonable efforts.").

"The trial court must find by clear and convincing evidence that aggravated circumstances exist in order to excuse the reasonable-efforts requirement." *Barber/Espinoza*, ___ Mich at ___; slip op at 4.  See also *In re Simonetta*, 507 Mich 943, 943 (2021) (remanding for the trial court to "either order that the petitioner provide reasonable services to the respondent, or articulate a factual finding based on clear and convincing evidence that aggravated circumstances exist such that services are not required"); MCL 712A.19a(2)(a); MCR 3.977(E), (I).[5]  Absent such findings, a trial court may not terminate an individual's parental rights at initial disposition. *Barber/Espinoza*, ___ Mich at ___; slip op at 9, 12.

Here, the trial court indicated in its written order following the preliminary hearing that it found aggravated circumstances under MCL 722.638(1) and (2) existed such that DHHS was not required to make reasonable efforts toward reunification.  But the court never articulated the factual basis for that apparent conclusion or how any such factual basis met the clear-and-convincing-evidence standard.  See *Simonetta*, 507 Mich at 943; see also MCR 3.977(I).  The court did not mention or purport to address "aggravated circumstances" at the preliminary hearing, nor did it provide any indication to the parties that it was making a judicial determination of aggravated circumstances based on the facts and allegations before it.   See MCL 712A.19a(2)(a); *Barber/Espinoza*, ___ Mich at ___; slip op at 9, 12.  Furthermore, in its subsequent termination order, the court not only failed to make any finding that aggravated circumstances existed, but also erroneously indicated that reasonable efforts toward reunification had been made.  See, e.g., *Walters*, ___ Mich App at ___; slip op at 4.  And DHHS, for its part, did not cite to MCL 712A.19a(2)(a) or MCL 722.638 in its petition requesting termination at initial disposition.  Nor did it make any argument—either in its petition requesting termination at initial disposition or at the preliminary hearing—as to an underlying basis for finding aggravated circumstances in this

---

[5] "MCR 3.977(E) provides the procedural requirements for terminating parental rights at an initial dispositional hearing." *In re Utrera*, 281 Mich App 1, 16; 761 NW2d 253 (2008).

case. In fact, neither DHHS nor the court made any mention of aggravated circumstances at *any* hearing held during these 19-month proceedings.

The trial court's written order following the preliminary hearing provides the only potential insight into the substantive basis for the court's finding of aggravated circumstances. That order listed "[i]mproper supervision" and "unfit home" as the circumstances relieving DHHS of its duty to make reasonable efforts toward reunification. But neither of these circumstances is expressly listed as a basis for a judicial determination of aggravated circumstances under MCL 722.638(1)(a). And even when we attempt to glean what the underlying reasons for those findings may have been, it is not apparent how, in this case, they would constitute "abuse" within the meaning of the statute.

As discussed, the statute requires that a listed individual "abused the child or a sibling of the child" and that the abuse "included" at least one of the six enumerated circumstances, regardless of whether that enumerated circumstance was perpetrated by the listed individual. MCL 722.638(1)(a); see also *Barber/Espinoza*, ___ Mich at ___; slip op at 11. It is clear enough from the record that the driving force behind the court's determination was the physical injuries suffered by MKB when he was shot by KM while in respondents' care. As noted, MKB required reconstructive surgery to address the injuries he sustained to the left side of his nose, cheek, and shoulder. Although the trial court made no specific finding on the matter (and we need not do so in the first instance here), this may be sufficient to satisfy MCL 722.638(1)(a)(*iii*)'s "serious physical harm" requirement. See MCL 722.622(ee) (providing that " 'serious physical harm' mean[s] th[at] term[] as defined in . . . MCL 750.136b"); MCL 750.136b(1)(f) (defining " '[s]erious physical harm' " as "any physical injury to a child that seriously impairs the child's health or physical well-being, including, but not limited to, brain damage, a skull or bone fracture, subdural hemorrhage or hematoma, dislocation, sprain, internal injury, poisoning, burn or scald, or severe cut").

But even if so, such serious physical harm to MKB would not constitute an aggravated circumstance under MCL 722.638(1)(a) unless it was *included* in abuse of MKB or one of his siblings by respondents or another listed individual. See *Barber/Espinoza*, ___ Mich at ___; slip op at 10-11. And here, there is nothing to suggest that respondents or any other listed individual "abused" MKB or his siblings within the meaning of MCL 722.638(1)(a)—i.e., that MKB or his siblings suffered "harm or threatened harm to [their] health or welfare that occur[red] through nonaccidental physical or mental injury, sexual abuse, sexual exploitation, or maltreatment, by" one or both respondents (or any other listed individual), MCL 722.622(g). See also *Barber/Espinoza*, ___ Mich at ___; slip op at 10-11.

DHHS's allegations against respondents were based entirely on the shooting incident and the claimed improper supervision and unfit home environment that allowed for it. DHHS, however, did not allege that the incident was included within any "abuse," as defined by MCL 722.622(g), of MKB or his siblings by respondents or anyone else. On appeal, DHHS suggests that this "abuse" requirement was satisfied because MKB's "injuries were the result of non-accidental actions taken by" respondents. MCL 722.622(g), however, does not ask whether any of respondents' conduct leading up to MKB's injuries could be characterized as nonaccidental, but

-6-

instead whether MKB suffered harm through "nonaccidental physical . . . injury" by respondents. The trial court made no finding to that effect, and the record before it did not support one.[6]

The shooting incident was certainly tragic and also troubling, inasmuch as several young children, including MKB, were left without adult supervision in an area of respondents' home containing an unsecured, loaded gun. But to justify forgoing reasonable efforts toward reunification and seeking termination of respondents' parental rights at initial disposition, the incident must fall within the "rare circumstances provided by statute"—and the court "must find [as much] by clear and convincing evidence." *Barber/Espinoza*, ___ Mich at ___; slip op at 3-4. Here, although MKB may have suffered "serious physical harm," the trial court made no finding— and the present record does not indicate—that MKB's injuries were "included" in any "abuse" of him or his siblings by respondents (or any other listed individual), as required by MCL 722.638(1)(a).

### III. CONCLUSION

For the reasons set forth above, the trial court plainly erred by excusing DHHS from its obligation to provide reasonable efforts toward reunification and instead terminating respondents' parental rights at initial disposition. This plain error also prejudiced respondents such that reversal is warranted, as "the fairness and integrity of the[se] proceeding[s] was seriously affected by the damage done to the framework in which the case progressed." *Walters*, ___ Mich App at ___; slip op at 7; see also *Pederson*, 331 Mich App at 463. Accordingly, we vacate the trial court's order terminating respondents' parental rights and remand for further proceedings consistent with this opinion. On remand, DHHS shall prepare a case service plan for each respondent and the trial court shall order that reasonable efforts be made toward reunification, unless or until a

---

[6] We note that, at the termination hearing, respondent-mother confirmed that, in October 2023, she pleaded guilty to second-degree child abuse in connection with the shooting incident and that, in December 2023, she was sentenced to five years' probation for that plea conviction. The record before us does not contain further meaningful details regarding that plea, beyond that respondent-mother stated at the termination hearing that the plea was for her negligence with the gun and that she took full responsibility for her actions. DHHS does not argue that respondent-mother's plea provided the basis for the trial court's finding of aggravated circumstances as to her in this case— nor could it have, given that it was entered months after the court's order to that effect. We also note that, as a general matter, whether respondent-mother's actions in connection with the shooting incident amounted to the criminal offense of second-degree child abuse, see MCL 750.136b(3), is a distinct inquiry from whether aggravated circumstances existed in this case, see MCL 722.638(1)-(2), with each inquiry having its own terms and requirements; the former is not necessarily dispositive of the latter. For the reasons discussed above, based on the record before us and the legal standards that govern the inquiry, the trial court erred by concluding that aggravated circumstances were present in this case and reasonable efforts toward reunification were not required.

determination is properly sought and made on the record that such efforts are excused by law.[7]
See *Simonetta*, 507 Mich at 943. We do not retain jurisdiction.


/s/ Philip P. Mariani
/s/ Michelle M. Rick
/s/ Christopher P. Yates

---

[7] While we do not see, in the record now before us, adequate support for a finding of aggravated circumstances, this opinion does not foreclose the trial court from making such a determination should it be presented with clear and convincing evidence to that effect. See *Simonetta*, 507 Mich at 943.

In addition, in light of the above disposition, we need not—and do not—reach respondents' challenges to the trial court's determinations regarding statutory grounds for termination and whether termination was in the children's best interests.