*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re RICHARDSON/RAGLAND Minors.

UNPUBLISHED
March 26, 2019

Nos. 345142; 345143
Monroe Circuit Court
Family Division
LC No. 16-023833-NA

Before: SHAPIRO, P.J., and BECKERING and M. J. KELLY, JJ.

PER CURIAM.

The trial court terminated each respondent's parental rights to the three minor children they had in common. The court also terminated respondent-mother's parental rights to another minor child. The statutory grounds for termination of respondent-mother's rights were MCL 712A.19b(3)(c)(*i*), (c)(*ii*), and (g). The same grounds, as well as MCL 712A.19b(3)(h), were relied on for termination of respondent-father's parental rights. We affirm in each appeal.

Respondent-mother has a history with Child Protective Services (CPS), dating back to her first child's birth in 2011, including drug abuse and neglect. She was referred for services on several occasions, but did not follow through with the relevant agencies. Respondent-father, the father of the three younger children, was arrested in January 2016 before the youngest child was born. In April 2016, he was sentenced to 2 ½ to 10 years in prison.

In May 2016, petitioner, the Department of Health and Human Services, sought temporary jurisdiction over the four children. Respondent-mother entered a plea of admission, allowing the trial court to exercise jurisdiction over the children. The trial court entered its initial dispositional order in June 2016, which required respondent-mother to comply with various requirements of a case-service plan. After respondent-father established paternity to his three children, he entered a plea of admission to the court's jurisdiction in September 2016.

Petitioner sought termination of respondents' parental rights in a petition filed in October 2017. In December 2017, following a termination hearing, the trial court declined to terminate respondents' parental rights and ordered petitioner to continue to provide reunification services. The court found that although respondent-mother had admitted to using marijuana, the evidence did not show that her continued use impaired her ability to care for the children. The court noted that respondent-mother's primary deficiencies were a lack of housing and income, but her

testimony indicated that she was employed and had obtained housing that was ready for her children. Therefore, the evidence did not demonstrate that respondent-mother would not be able to rectify the conditions that led to the adjudication, or that she would not be able to provide proper care and custody, within a reasonable period of time. The court also declined to terminate respondent-father's parental rights. The court set a 45-day goal for respondent-mother to demonstrate her ability to adequately parent the children.

After the December 2017 termination hearing, caseworkers discovered that, contrary to respondent-mother's testimony at the hearing, her home was not ready for the children because it had no furniture other than a toddler bedframe without a mattress. The agency arranged to provide temporary furnishings for respondent-mother while she worked with the agency and with other community resources to prepare her home. The agency also learned that respondent-mother was unemployed and had been dismissed from her prior job before the first termination hearing, contrary to her testimony at the hearing. The agency assigned a parent mentor to work with respondent-mother one-on-one and during semi-supervised visitation with the children in her home. During visitations, workers observed that respondent-mother failed to supervise all four children or engage with them effectively. Respondent-mother also allowed unapproved visitors access to her home while the children were present. Petitioner filed a second petition to terminate respondents' parental rights, which the trial court granted in July 2018 on the statutory grounds listed above.

## I. DOCKET NO. 345142 (RESPONDENT-MOTHER)

Respondent-mother initially argues that the trial court erred by exercising jurisdiction over the children on the basis of her plea of admission in May 2016, which she contends did not establish a proper statutory basis for jurisdiction.

Because respondent-mother did not challenge the trial court's exercise of jurisdiction or the validity of her plea at the plea proceeding, in a motion to withdraw her plea, or otherwise in the trial court, this issue is unpreserved. *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). More significantly, an adjudication generally "cannot be collaterally attacked following an order terminating parental rights." *In re SLH*, 277 Mich App 662, 668; 747 NW2d 547 (2008). Accord *In re Hatcher*, 443 Mich 426, 444; 505 NW2d 834 (1993). Only when the termination occurs at the initial disposition can a respondent directly challenge both the statutory ground for jurisdiction, i.e., an adjudication, and the termination of parental rights. See *In re SLH*, 277 Mich App at 668. In this case, the trial court terminated respondent-mother's parental rights pursuant to a supplemental petition and thus she is barred from now collaterally challenging the court's decision to exercise jurisdiction over the children.

Respondent-mother cites *In re Wanger*, 498 Mich 911 (2015), in support of her argument that an error at the adjudication stage can be appealed after entry of an order terminating parental rights. In that case our Supreme Court found that the respondent's jurisdictional challenge based on errors at the plea proceeding was not an impermissible collateral attack because it was "unclear when the trial court issued its initial dispositional order, which is the first order appealable by right." *Id*. Here, there is no uncertainty that the trial court issued the initial dispositional order on June 9, 2016. The trial court later terminated respondent-mother's parental rights pursuant to a supplemental petition, and it entered its order terminating her

parental rights more than two years after it issued the initial dispositional order, which was never appealed or otherwise challenged below. Accordingly, respondent-mother may not now collaterally attack the trial court's exercise of jurisdiction in this appeal.

We reject respondent-mother's argument that she should be permitted to challenge the trial court's exercise of jurisdiction in this appeal because the initial dispositional order was not a "final order." Respondent-mother's ability to appeal the initial dispositional order does not depend on whether the order qualifies as a "final" order. MCR 3.993(A) provides:

> (A) The following orders are appealable to the Court of Appeals by right:
>
> (1) an order of disposition placing a minor under the supervision of the court or removing the minor from the home,
>
> (2) an order terminating parental rights.

Thus, the initial dispositional order was appealable by right irrespective of whether it qualifies as a final order.[1]

Respondent-mother next argues that the trial court erred by finding that termination of her parental rights was in the children's best interests.[2] Once a statutory ground for termination is established, the trial court shall order termination of parental rights if it finds that termination is in the child's best interests. MCL 712A.19b(5). The trial court's best-interest decision is reviewed for clear error. *In re Brown/Kindle/Muhammad*, 305 Mich App 623, 637; 853 NW2d 459 (2014). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011).

Petitioner presented ample evidence that respondent-mother had weak or non-existent bonds with the children. CSR, the child most strongly attached to respondent-mother, was detaching as he realized that respondent-mother was not going to progress to reunification. CSR wanted a normal childhood, but had already accepted that he would not have one with respondent-mother. JJSR was distressed by visitation with respondent-mother. He stated that he did not want to see her. ACR did not yet have an ability to form normal attachments. She readily attached to any adult, and addressed all females as "Mama." She never developed a normal relationship with either biological parent. In supervised visitation, multiple witnesses

---

[1] Even if we considered respondent-mother's argument, we would conclude that it lacks merit. Respondent-mother admitted at the plea proceeding that she did not have adequate housing, that her drug use interfered with her ability to parent, and that she was offered, but refused, services to rectify these problems. These admissions were sufficient to establish that respondent-mother's children were at risk of harm and lacked a fit home environment, thereby supporting the trial court's exercise of jurisdiction under MCL 712A.2(b)(1) and (2).

[2] Respondent-mother does not challenge the trial court's determination that statutory grounds for termination were established under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), and (g).

observed that respondent-mother failed to interact with her children and failed to recognize when they met potential hazards.

There was also substantial evidence that respondent-mother would not be able to provide a stable, permanent home within a reasonable time. Respondent-mother had eventually established adequate housing but only with substantial assistance from several providers. The home remained unsuitable because she allowed unapproved persons to visit when the children were present and she was unable to adequately supervise all of the children. In addition, after two years, she had not demonstrated an ability to remain employed. There was evidence that she generally displayed an inability to handle adult and parental responsibilities, such as living independently, supporting herself, and meeting her children's needs, including safety.

Respondent-mother asserts that the trial court wrongly "chastised" her "for comments made at a prior hearing without succinctly identifying relevant factors" that changed between the two termination hearings. This ignores that respondent-mother gave patently false testimony at the first hearing when she told the court that her home was ready for her children and that she was still employed. In any event, there was substantial evidence to support the trial court's best-interests determination.

## II. DOCKET NO. 345143 (RESPONDENT-FATHER)

Respondent-father argues that the trial court clearly erred by finding that statutory grounds for termination were established by clear and convincing evidence. The trial court terminated respondent-father's parental rights pursuant to MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (h) which permitted termination under the following circumstances:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

> (*ii*) Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

* * *

(g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.[3]

(h) The parent is imprisoned for such a period that the child will be deprived of a normal home for a period exceeding 2 years, and the parent has not provided for the child's proper care and custody, and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

Respondent-father primarily argues that the trial court erred by terminating his parental rights because he was incarcerated throughout the proceedings and thus did not have a meaningful opportunity to participate in the proceedings and work toward reunification. He claims he would be paroled in July 2018, the same month that the trial court issued its order terminating his parental rights.

In *In re Mason*, 486 Mich 142; 782 NW2d 747 (2010), our Supreme Court held that an incarcerated parent has the right to participate in child protective proceedings. In that case, the respondent-father was not given the opportunity to participate in review hearings by phone, and the petitioner failed to provide him with an updated case-service plans. The worker also did not contact the prison social worker to help the respondent obtain services in prison. *Id*. at 155-158. The Supreme Court held that the trial court erred by terminating the respondent's parental rights under § 19b(3)(h), giving three reasons for that decision. First, the trial court failed to take into account that the respondent anticipated being paroled in less than two years at the time the petitioner sought termination of parental rights. *Id*. at 162. Second, the court erred by accepting the worker's opinion that the respondent would not be ready to care for his children for at least six months after he was released from prison. The Court noted that petitioner failed to evaluate the respondent's parenting skills and failed to facilitate his access to services. *Id*. Third, the trial court never considered whether the respondent could provide care for his children "by voluntarily granting legal custody to his relatives during his remaining term of incarceration." *Id*. at 163. The Court noted that the children had, in fact, been successfully placed with the respondent's family. *Id*. at 163-164. The Court also considered grounds for termination under §§ 19b(3)(c)(*i*), (g), and (j), and determined that the trial court erred by terminating under these grounds because the respondent was not allowed the opportunity to participate in the proceedings and work toward reunification. *Id*. at 165-166.

This case is distinguishable from *In re Mason*. Respondent-father does not dispute that he received the case-service plan, and he participated by phone in the periodic review hearings, in addition to the two termination hearings. The trial court did not disregard respondent-father's testimony that his parole was imminent. The court instead found that "[h]e will be moving into a home in which his children will not be able to live." The court implicitly discredited respondent-father's expectation of an independent home within six months by remarking that his ability to

---

[3] This version of § 19b(3)(g) became effective June 12, 2018. See 2018 PA 58.

provide for his children would be hindered by his financial responsibility for outstanding warrants. Additionally, whereas the respondent in *In re Mason* "did construction work to support the family" before his incarceration, *id.* at 147, there is no evidence that respondent-father had ever provided substantial support for his children. Moreover, respondent-father did not establish his paternity until after these proceedings began, and he did not offer any suitable relatives who could provide temporary custody for the children.

Given these circumstances, the trial court did not clearly err by finding that termination of respondent-father's parental rights was warranted under §§ 19b(3)(c)(*i*) and (c)(*ii*). Even if respondent-father's optimistic expectation of sufficient income and independent housing within six months were realized, the children had already been in care for two years and were at a stage where they were in dire need of stability and permanence. Moreover, respondent-father was a virtual stranger to his three children. The only child with whom he had previously established a bond was JJSR, but it was doubtful that any bond with this child still existed at the time of the hearing. In addition to establishing his own housing and financial stability, respondent-father would need to establish a relationship with his children and demonstrate his parenting abilities before reunification would be possible. His lack of a relationship with the children and his prior failure to provide for them financially and emotionally weighs against a reasonable expectation that he would be able to rectify these conditions within a reasonable time considering the children's ages.

With respect to § 19b(3)(g), the record discloses that the trial court applied the prior version of the statute, which was amended by 2018 PA 58, effective June 12, 2018, which was approximately seven weeks before the court issued its order terminating respondent-father's parental rights. Before it was amended, § 19b(3)(g) provided:

> The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

The amendment replaced the language "without regard to intent" with "although, in the court's discretion, financially able to do so." We question the trial court's failure to apply the version of § 19b(3)(g) in effect at the time the court issued its order. Notably, the court did not make findings regarding respondent-father's financial ability to provide proper care and custody for the children. However, because only one statutory ground for termination is sufficient to support termination of parental rights, *In re Schadler*, 315 Mich App 406, 410; 890 NW2d 676 (2016), and the trial court did not clearly err by finding that termination of respondent-father's parental rights was justified under §§ 19b(3)(c)(*i*) and (c)(*ii*), any error in relying on § 19b(3)(g) as an additional ground for termination was harmless.

We also question the trial court's reliance on § 19b(3)(h) (imprisonment "for such a period that the child *will* be deprived of a normal home for a period exceeding 2 years") (emphasis added) where the evidence indicated that respondent-father was expected to be

paroled shortly after the termination hearing concluded.[4]  Again, however, because the trial court properly found that termination of respondent-father's parental rights was justified under §§ 19b(3)(c)(*i*) and (c)(*ii*), any error in relying on § 19b(3)(h) was also harmless. *In re Schadler*, 315 Mich App at 410.

Respondent-father also argues that the trial court erred by finding that termination of his parental rights was in the children's best interests.  As previously indicated, the children were in dire need of stability and permanence.  Although respondent-father had established a bond with JJSR before he was incarcerated, the child was only two years old when respondent-father entered prison and the evidence indicated that the child did not remember respondent-father.  Respondent-father stated that he played with ACR when she was an infant, but this evidence did not establish any notable bond with the child.  Respondent-father never met the youngest child, MLLR.  Respondent-father had never cared for the children or provided them with substantial financial support.  Conversely, the children had begun bonding with a family who was interested in adopting them, which would provide them with the stability and permanence they needed.  The trial court did not clearly err by finding that termination of respondent-father's parental rights was in the children's best interests.

Affirmed.


/s/ Douglas B. Shapiro
/s/ Jane M. Beckering
/s/ Michael J. Kelly

---

[4] Indeed, respondent-father was paroled after the hearing concluded, but before the court issued its order terminating parental rights.