*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

In re BURKHART/ODIL, Minors.

UNPUBLISHED
October 24, 2019

No. 343111
Shiawassee Circuit Court
Family Division
LC No. 16-013829-NA

ON REMAND

Before: CAMERON, P.J., and BECKERING and RONAYNE KRAUSE, JJ.

PER CURIAM.

After vacating this Court's prior decision[1] in this termination of parental rights case, the Michigan Supreme Court remanded the matter to this Court for reconsideration in light of the Supreme Court's recent decision, *In re Ferranti*, __ Mich __; __ NW2d __ (2019) (Docket No. 157907).[2] After such reconsideration, we again affirm the trial court order that terminated respondent-mother's parental rights to the children at issue.

## I. RELEVANT FACTS AND PROCEEDINGS

The Department of Health and Human Services (DHHS) sought custody of respondent's three children in a petition filed January 13, 2016. The petition generally alleged that respondent

---

[1] *In re Burkhart/Odil, Minors*, unpublished opinion per curiam of the Court of Appeals, issued February 19, 2019 (Docket No. 343111). In our prior opinion, *id*, unpub op at 2 n 1, we noted that the correctness and continuing validity of *In re Hatcher*, 443 Mich 426; 505 NW2d 834 (1993) was being considered by the Michigan Supreme Court in *In re Ferranti*, 502 Mich 906; 913 NW2d 330 (2018). However, we remained bound at the time by *In re Hatcher* and its holding with respect to what the Supreme Court had deemed a collateral attack on the trial court's exercise of jurisdiction.

[2] *In re Burkhart/Odil, Minors*, 931 NW2d 368 (Mich, 2019).

had left the children with Scott Odil, Sr., father of the youngest child,[3] and Odil Sr.'s mother sometime in December 2015, and that her whereabouts were unknown. DHHS had tried to find respondent by asking relatives, conducting searches through various agencies, sending letters to last known addresses, checking Facebook, calling known telephone numbers, and other methods. The petition explained that DHHS had received information that respondent had abused drugs and shoplifted in the presence of the children. The petition alleged that respondent's previous landlord had evicted her because she sold drugs out of her home and that while cleaning out the home the landlord found needles under the children's beds, under respondent's bed, and in the couch.

At the January 13, 2016 hearing, the circuit court explained that DHHS was asking the court to approve an initial removal of the children. Odil Sr. was present and explained that respondent was "missing. There's a . . . State Police missing person's report that I filed. She dropped the kids off with us in December and left." Destiny Ray, an investigator with DHHS, testified under oath that respondent could not be located. Odil Sr. lacked legal representation at the hearing, and after the court informed him that he could request an appointed attorney, he elected to do so. The trial court found that respondent could not be located, and it could not be determined if she had proper housing for the children. Consequently, the court felt "forced to conclude that due [to] the inability to confirm those two things, it is contrary to the welfare of the children that they be left in the proper care and custody of [respondent]." The court also found it contrary to the welfare of the youngest child to remain in Odil Sr.'s care. Accordingly, the court ordered all three children placed with DHHS. The court informed Odil Sr. that he had a right to a preliminary hearing within 14 days, and advised him regarding how to go about requesting counsel. The court entered an order to take the children into protective custody on the same day. On January 22, 2016, the court entered an order adjourning the preliminary hearing until February 2, 2016, to allow time for the appointment of counsel to represent Odil Sr. and explaining that respondent's whereabouts were still unknown. Jana L. Kurrle entered an appearance as a court-appointed attorney for Odil Sr. on January 28, 2016.

The preliminary hearing took place as scheduled on February 2, 2016. Respondent appeared by telephone[4] and did not have an attorney. The court explained that respondent had three options: (1) waive the preliminary hearing; (2) ask for an appointed attorney to represent her for the preliminary hearing, in which case the trial court would need to adjourn to secure an attorney; or (3) proceed with the preliminary hearing that day. After confirming that she understood, respondent asked for an attorney. Odil Sr.'s counsel indicated that his client wished to waive the preliminary hearing and enter a no-contest plea to jurisdiction. The court adjourned the preliminary hearing with respect to respondent, and took a no-contest plea from Odil Sr. to jurisdiction. An order entered on February 2, 2016, continued the preliminary hearing to

---

[3] According to the record, the father of the two eldest children was deceased. The petition also pertained to Odil Sr. However, because Odil Sr.'s parental rights are not at issue in this appeal, we will not present facts relevant only to him.

[4] Respondent went to jail in January 2016 after she missed a court date for a DUI charge.

February 22, 2016. Attorney Matthew Van Epps entered an appearance on respondent's behalf on February 9, 2016.

The February 22, 2016 hearing took place as scheduled. Respondent's counsel was present in the courtroom, and respondent appeared by telephone. Counsel explained that respondent had decided to waive the preliminary hearing, and after the trial court explained to respondent what it meant to waive the preliminary hearing, she confirmed her desire to waive. During this discussion, the court asked respondent if she had seen the petition itself. Respondent answered, "No. But my lawyer did go over it with me today." The court entered an order of adjudication on February 22, 2016, with respect to Odil Sr. only. The trial court entered a case management order on March 7, 2016, that set a pretrial hearing for March 21, 2016, and a bench trial for April 19, 2016.

The adjudication trial concerning respondent took place as scheduled on April 19, 2016. Respondent's attorney was present, but explained that respondent was not present:

> I spoke with her this morning. She is from Alpena and did not have transportation now. She was aware of what the purpose of today's hearing is. I informed her what I anticipated the outcome was going to be. And she was – she stated she understood.

The trial court took evidence. Relevant to the trial court's decision, Odil Sr. testified that after his release from jail, he lived with his mother. During this time, respondent contacted him and stated that she wanted to reconcile. Respondent, Odil Sr., and the children all lived with Odil Sr.'s mother beginning in November 2015. However, that reconciliation was short-lived; after a few weeks, Odil Sr. discovered that respondent was using heroin and had cheated on him. This led to an altercation between respondent and Odil Sr., and respondent left in early December 2015, taking two of the children with her. Two days later, respondent came back and left the two children with Odil Sr. and his mother. Respondent saw the children briefly on December 24, 2015, and on January 4, 2016.[5] DHHS became involved as described above because Odil Sr. and his mother contacted them in December 2015. Respondent did not give Odil Sr. or his mother power of attorney or otherwise give them legal authority with respect to the children to ensure that they could receive medical treatment in her absence.

The trial court explained that the petition set forth allegations of "abandonment, threatened harm, and improper supervision. Clearly, by a preponderance of the evidence, . . . all

---

[5] According to Odil Sr., respondent came on this day to "get the girls' social security cards. The money that's suppose[d] to go to the girls from their father passing away. She came and took the money from the girls." It seems that Odil Sr. was not talking about social security identification cards, but rather, debit cards that benefit recipients may choose to access cash benefits direct-deposited into their account. Odil Sr. explained that he used the cards to buy clothes and other supplies for the children, but that on January 4, 2016, respondent appeared and took the cards, "Like right after the money went on." These cards accessed the only semblance of financial support provided by respondent after she left the children with Odil Sr. and his mother.

of them occurred." The court observed that respondent "left her children without the legal authority for anyone to care for them." The court further observed, "[t]here has been no evidence one way or the other of any attempt to contact the children by her since January 3rd [sic, January 4, 2016], and prior to that December 24th. I don't know why. And [respondent] is not here to tell me why." The court found grounds to assume jurisdiction over the children as related to respondent.

This Court's prior unpublished opinion explains what happened next:

Respondent was provided with an opportunity to participate in reunification services, but she did not consistently participate in services or regularly visit the children, and she continued to engage in criminal activity, leading to periods of incarceration. In January 2018, petitioner filed a supplemental petition requesting termination of respondent's parental rights. Respondent pleaded no contest to the statutory grounds for termination and, following a best-interest hearing, the trial court found that termination of respondent's parental rights was in the children's best interests. This appeal followed. [*In re Burkhart/Odil*, unpub op at 1-2.]

We summarized respondent's arguments on appeal, and our resolution of those arguments, in the first paragraph of the original opinion:

On appeal, respondent does not challenge the existence of statutory grounds for termination or the trial court's findings regarding the children's best interests. Instead, she contends that there were various procedural errors both preceding and following the trial court's exercise of jurisdiction, depriving her of due process. However, because respondent's parental rights were terminated pursuant to a supplemental petition after reunification services were provided, she cannot collaterally attack the trial court's exercise of jurisdiction in this appeal. Further, respondent has not demonstrated plain error affecting her substantial rights with respect to her unpreserved claims of procedural error during post-adjudication dispositional proceedings. Accordingly, we affirm. [*Id.* at 1]

While we rejected all of respondent's post-adjudication concerns on the merits, *id*. at 3-6, we did not address the merits of her issues related to the adjudication and what led up to that event, *id*. at 1-3. Rather, we concluded that, pursuant to *In re Hatcher*, 443 Mich 426; 505 NW2d 834 (1993), overruled by *In re Ferranti*, __ Mich __; __ NW2d __ (2019) (Docket No. 157907), the collateral-bar rule precluded respondent from challenging issues arising from the adjudication and earlier proceedings in an appeal of the order terminating her parental rights. *Id.*

As indicated, however, *Ferranti* overruled *Hatcher*. In *Ferranti*, our Supreme Court held that, because the adjudication and subsequent termination are part of one continuous proceeding, an appellate challenge to the adjudication raised only after the termination order is not a collateral attack, as had been held in *Hatcher*. *Ferranti*, __ Mich at ___; slip op at 10-18. Accordingly, the collateral-bar rule does not apply within one child protective case to bar some

issues from review. *Id*. at 28. This ruling now entitles respondent to raise issues arising from the adjudication and events occurring prior to the adjudication on appeal from the order terminating her parental rights.[6]

## II. ANALYSIS

Because respondent did not raise the alleged pre-adjudication and adjudication errors below, this Court's review is for plain error affecting substantial rights. See *Ferranti*, __ Mich at __; slip op at 22. In order to prevail, respondent must "establish that (1) error occurred; (2) the error was 'plain,' i.e., clear or obvious; and (3) the plain error affected [her] substantial rights." *Id*. "And the error must have seriously affected the fairness, integrity or public reputation of judicial proceedings." *Id*. (quotation marks, brackets, and ellipses omitted).

Respondent first asserts that there was no transcript of the January 13, 2016 hearing, thus rendering it impossible to determine what evidence DHHS produced to support the trial court's finding that continued placement of the children in respondent's home was contrary to the children's welfare. While it is true that a transcript of that hearing was not available when

---

[6] This is not to say that respondents have an unbounded right to appeal their adjudication and prior proceedings from a termination order. Effective the same date that the Supreme Court issued *Ferranti*, June 12, 2019, relevant court rules were amended to require the trial court to notify a respondent in a child protective proceeding of the right to appeal following a child's initial removal from the home and the initial dispositional order. MCR 3.972(F)(1). Failure to appeal could bar the respondent from later challenging the trial court's assumption of jurisdiction. *Ferranti*, __ Mich at __ (MARKMAN, J., dissenting); slip op at 1 n 1. A respondent may now challenge the assumption of jurisdiction in an appeal from a termination order "if the respondent's paternal rights are terminated at the initial dispositional hearing pursuant to MCR 3.977(E)[,]" or if the court fails to properly advise the respondent that, *inter alia*, he or she may appeal the assumption of jurisdiction from the initial disposition order. See MCR 3.972 (G).

A recent, unpublished opinion of this Court held that when a court rule changes while a direct appeal is pending, it is appropriate to decide the appeal under the new rule, not the rule in place at the time the trial court made the challenged decision. *People v Tietz*, unpublished per curiam opinion of the Court of Appeals, issued July 25, 2019 (Docket No. 342613). However, in an unpublished opinion decided two days before *Tietz*, this Court decided a matter affected by *Ferranti* citing only the former version of the court rules. *In re Brown*, unpublished per curiam opinion of the Court of Appeals, issued July 23, 2019 (Docket No. 34325). Both cases are unpublished and, thus, have no precedential value, but they do suggest that there is some disagreement on the matter. Moreover, under either version of the court rules, the present respondent may raise the issues concerning her adjudication and earlier proceedings. Respondent's right to appeal under the old rules derives from the *Ferranti* ruling. *Ferranti*, __ Mich at __; slip op at 10-22. Her right to appeal under the new rules derives from the fact that the trial court did not inform her at the conclusion of her bench trial that she could be barred from challenging the assumption of jurisdiction unless she filed an appeal from the initial order of disposition. MCR 3.972(G).

respondent filed her brief in September 2018, the transcript was produced and available in November 2018. However, respondent did not seek to file a supplemental brief before this Court's initial opinion, and has not sought to file one at this point, explaining any errors arising from the January 13, 2016 hearing. She has thus not demonstrated any error stemming from the January 13, 2016 hearing.

Respondent next claims that she is entitled to relief because the trial court did not hold the preliminary hearing in the timely fashion required by MCR 3.965. We disagree. The trial court began the preliminary hearing on January 13, 2016, which complied with the court rules. See MCR 3.965(A)(1) (requiring the preliminary hearing to commence within 24 hours after a child is taken into protective custody). The court could not complete the preliminary hearing at that time, however, because Odil Sr. requested counsel, and because respondent could not be located, despite a significant effort by DHHS to find her. Pursuant to MCR 3.965(B)(1), "The preliminary hearing may be adjourned for the purpose of securing the appearance of an attorney, parent," or others. That is exactly what the trial court did in this case.

Respondent points out that MCR 3.965(B)(11) authorizes a court to adjourn the preliminary hearing "for up to 14 days to secure the attendance of witnesses or for other good cause shown." To the extent that she assumes that this 14-day limit applies to any adjournment, she is mistaken. MCR 3.965(B)(11) contemplates adjournments for purposes different than does MCR 3.965(B)(1). Whereas MCR 3.965(B)(11) authorizes a 14-day to secure "the attendance of witnesses or for other good causes shown[,]" MCR 3.965(B)(1) authorizes adjournment to secure the appearance of an attorney or parent, or others. The adjournments that took place at the outset of this case clearly fell under MCR 3.965(B)(1), and that rule contains no time limit. Respondent provides no authority for the proposition that all adjournments, for any reason, must be for no more than 14 days. She thus has not demonstrated error.

Even if we assumed that adjournments under MCR 3.965(B)(1) were limited to 14 days, no relief is warranted. Plain-error review requires respondent to establish that her substantial rights were affected. *Ferranti*, ___ Mich at ___; slip op at 22.[7] This generally requires showing that the error affected the outcome of the proceedings. *In re Utrera*, 281 Mich App 1, 9; 761 NW2d 253 (2008). Respondent fails entirely to explain how the delay in the proceeding had any effect on the outcome. Moreover, given that her ultimate decision was to waive the preliminary hearing, we cannot conceive of any prejudice that arose. Further, respondent cannot seriously contend that the adjournments of the preliminary hearing "seriously affected the fairness, integrity or public reputation of judicial proceedings," the final requirement of the plain-error test. *Ferranti*, ___ Mich at ___; slip op at 22 (quotation marks, brackets, and ellipses omitted). The trial court delayed the preliminary hearing so that respondent could be located and so that both she and Odil Sr. could have the assistance of counsel. Clearly, the trial court acted to *ensure* the fairness and integrity of the proceeding, not to undermine them.

---

[7] See also MCR 1.105 ("These rules are to be construed to secure the just, speedy, and economical determination of every action and to avoid the consequences of error that does not affect the substantial rights of the parties.").

Respondent also claims entitlement to relief because she was not provided a copy of the petition before she was allowed to waive the preliminary hearing. We again disagree. Concerning the procedure of a preliminary hearing, MCR 3.965(B)(4) states in relevant part, "If the respondent is present, the court must assure that the respondent has a copy of the petition." The obvious intent of the court rule is to ensure that a respondent knows and understands the allegations of the petition. Respondent did not have a copy of the petition at the time of the preliminary examination. As described above, respondent attended the hearing by telephone, and when the trial court asked if she had a copy of the petition, she replied that she did not, but her attorney had gone over it with her that morning. We read respondent's response as an affirmation that she knew and understood what the petition alleged. Furthermore, respondent has not indicated what prejudice arose from going over the petition with her attorney rather than having a physical copy of the petition, or how discussing the petition with her attorney prior to the hearing rather than having a copy of it "seriously affected the fairness, integrity or public reputation of judicial proceedings." *Ferranti*, __ Mich at __; slip op at 22. Thus under plain-error review, relief is not warranted.

Finally, respondent claims that she is entitled to relief because the trial court did not hold the adjudication trial within 63 days of the removal of the children, as MCR 3.972(A) generally requires, and because she was not present at the trial. Once again, we disagree. Regarding the first alleged error, the trial occurred about three months after the children's removal, and so indeed, the trial court did not hold the adjudication within 63 days of the removal. However, this is not an absolute deadline; MCR 3.972(A)(1)-(3) state reasons why the court may postpone a trial. Respondent fails to address whether any of those exceptions may be satisfied in this case. In any event, respondent fails to explain how the delay, much of which seems to have been caused by the need to locate her and obtain counsel, resulted in any prejudice, or undermined the fairness, integrity, or public reputation of the judicial proceedings. She has not demonstrated plain error.

As for respondent's failure to appear at the adjudication trial, it is clear from her attorney's explanation to the court that respondent was aware of the trial date and of the trial's purpose. On appeal, respondent claims that efforts should have been made to have her appear by telephone, or to arrange transportation for her, or that the trial should have been adjourned so that she could appear. Respondent's absence was discussed at the beginning of the trial, when her attorney explained that he had been in contact with her that morning. Counsel made no mention whatsoever of having respondent appear by telephone or requesting assistance with transportation, nor did counsel suggest adjourning the trial so that she could be present. Rather, counsel's statement implies that respondent was aware of the proceeding, but chose not to appear when she could not find transportation to the courthouse. Respondent "may not assign as error on appeal something that she deemed proper in the lower court because allowing her to do so would permit respondent to harbor error as an appellate parachute." *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011).

In any event, respondent fails to demonstrate any reason why her failure to attend the adjudication trial had any impact on the result. Respondent generally explains her belief that there was no evidence of any harm to the children presented at the trial, and that had she attended, she could have "made a significant difference in the potential outcome of the trial." Respondent was not present herself, but her attorney was, and the record shows that he cross-

examined witnesses and argued on her behalf. Respondent does not attempt to explain what testimony she could have provided, nor does she offer any insight into how, exactly, her presence would have made any difference. In addition, while she claims in her brief on appeal that "[d]ue [p]rocess required more effort to secure her appearance then that which occurred in this case[,]" she offers no authority or legal analysis supporting that position. Respondent has thus abandoned the issue. *In re Hudson*, 294 Mich App at 265 (indicating that when respondents provide no authority for their positions, this Court may deem the issues abandoned).

We conclude that respondent has failed to establish that any of the alleged pre-adjudication and adjudication errors constituted plain error affecting her substantial rights. Thus, respondent is not entitled to relief. With regard to respondent's post-adjudication claims of error, we affirm our analyses from the Court's prior opinion. See *In re Burkhart/Odil*, unpub op at 3-6. Accordingly, we again affirm the trial court order terminating respondent's parental rights.

Affirmed.

/s/ Thomas C. Cameron
/s/ Jane M. Beckering
/s/ Amy Ronayne Krause