*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re KESTER, Minors.

UNPUBLISHED
July 28, 2022

No. 359141
Huron Circuit Court
Family Division
LC No. 15-004467-NA

Before: M. J. KELLY, P.J., and MURRAY and BORRELLO, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to her minor children under MCL 712A.19b(3)(j).[1] For the reasons stated in this opinion, we vacate the trial court's order of adjudication and its order of termination, and we remand for further proceedings.

## I. BASIC FACTS

Respondent divorced the children's father in 2015. After the divorce, they maintained separate households and shared custody of the children. Later in 2015, their seven-month-old child sustained bruising to the side of his face while he was in his father's care. He was taken to a hospital. Medical personnel determined that the injuries were indicative of abuse. Following an investigation by Child Protective Services (CPS), petitioner, the Department of Health and Human Services, filed a petition seeking removal of the children from the care of respondent and the children's father. Respondent entered a plea of admission, the trial court took jurisdiction over the children, and respondent was ordered to comply with a case-service plan. She was offered and participated in a number of services, including services aimed at helping her recognize and respond to risks associated with exposing her children to both sexual offenders and violent individuals.

---

[1] The children's father voluntarily relinquished his parental rights to the children. He is not a party to this appeal.

In May 2016, petitioner recommended that the children be returned to respondent's care because respondent participated in and appeared to benefit from the services offered. In November 2016, the court terminated its jurisdiction over the children. At that time, respondent and the children's father were again living together. Between November 2016 and March 2020, CPS investigated the family several times but the children were not removed.

On March 2, 2020, however, CPS received a complaint of suspected child abuse. The youngest child—now five years old—was found with bruises on his body, including linear bruising on his buttocks. The children disclosed that their father hit them with a board and that respondent was aware that he did so. Although respondent initially denied knowing that the children were hit with a board, she later admitted that the children told her about the abuse. She also admitted that she had spoken to the children's father about his behavior because she did not like it when he used the board to "discipline" the children.

On March 3, 2020, petitioner filed a new petition seeking removal of the children and asking the court to again take jurisdiction over them. During the preliminary hearing, the court authorized the children's removal, suspended their father's parenting time, and allowed respondent supervised visitation.

On August 26, 2020, a pretrial hearing was held. Respondent attempted to enter a plea of admission to several allegations in the petition; the children's father, in turn, attempted to enter a plea of no contest to the allegations in the petition. Contrary to MCR 3.971(B)(3), the trial court did not advise either respondent or the children's father of the rights that they would be waiving by entering a plea. Nor did the court advise them of any of the consequences of their proffered pleas despite such advice being required by MCR 3.971(B)(4)—(B)(8). Contrary to MCR 3.971(D)(1), the court also made no effort to ascertain whether the proffered pleas were understanding, voluntary, and knowing. Instead, after determining that respondent and the children's father were "minimizing" their admissions, the court directed that respondent and the children's father be removed from the hearing.[2] After they were removed, the court expressed that it was disgusted with them, ordered petitioner to file a supplemental petition seeking termination of their parental rights, and suspended respondent's parenting time.

Before the proceeding ended, the children's guardian ad litem (GAL) had the following exchange with the prosecuting attorney:

> *Q.* So—so, [prosecutor], if—if the—the offer with [respondent] was that if she gave jurisdiction there would not be additional criminal charges or criminal charges; does that mean, at this point, does the Prosecutor's Office intend to file criminal charges?

---

[2] Because of the COVID-19 pandemic, the pretrial hearing was held using Zoom videoconferencing. The trial court suggested at a later hearing that allowing respondents to participate remotely was causing them to misunderstand the severity of the proceedings. However, when respondent's lawyer expressed a willingness to appear in person, the court stated that it was unnecessary.

*A.* That was not the offer. We were just seeking jurisdiction. It was [another prosecutor] who was handling the criminal case. He determined that he was not going to re-authorize criminal charges. I have not had a hand in anything that had to do with either of their criminal charges.

It is unclear whether respondent shared the GAL's understanding that if she entered a plea of admission, she would not have additional criminal charges brought against her. However, the record reflects that respondent's lawyer met with respondent's criminal lawyer and with the prosecutor one day before the pretrial. Moreover, the pretrial had previously been adjourned to allow time for respondent to be arraigned on criminal charges, and it had been adjourned to allow for ongoing plea discussions. Consequently, it appears likely that respondent may have also been under the mistaken impression that if she entered a plea in this case she would not be subject to criminal prosecution.

Following the hearing, petitioner filed a supplemental petition seeking termination of respondent's parental rights and the parental rights of the children's father, and the court entered an order suspending respondent's parenting time. The rescheduled pretrial was later adjourned to allow the lawyers more time. Respondent's lawyer used that time to meet with respondent for one hour and to also communicate with her via text message on a number of occasions.

On September 9, 2016, the pretrial hearing was continued. The court began the hearing by stating that its decision to abruptly end the prior hearing was because, after expressing a willingness to enter pleas, respondent and the children's father had minimized the events so as to deem them inconsequential. The court explained that it had asked for a petition seeking termination to be filed to see if the court could get "their attention." Respondent's lawyer then made the following statement:

Following the hearing, I had a meeting with my client, and we expanded—I've already provided the numbers that we would give [pleas of admission to] without any corrections. But number 20 was always the sticky one. So my client and I expanded that and I gave it to her to think about over the weekend and she contacted me. I was able to e-mail it [to] everyone, I think yesterday, and. .. it expanded to about page—and—and I did that on purpose so that it broke down into like one or two sentences per piece so that if there's any changes to be made, they're a lot easier than a bulky paragraph.

She indicated that, having discussed the matter with respondent, respondent had decided to enter a plea of admission.

The court decided that it was going to take respondent's testimony first. It did not, however, swear her in as a witness. As it relates to advising respondent of the rights she was waiving and the consequences of her plea, the trial court engaged in the following colloquy with her:

*Q.* . . . And, [respondent], you understand that nobody can force you to make an admission here today? That you have to be—it has to be of your own free will; do you understand that?

*A.* Yes.

*Q.* Do you also understand that in doing so, you would be giving up your right to a trial by the Court or by a jury; do you understand that?

*A.* Yes.

*Q.* Do you also understand that by giving jurisdiction, it would open up the—the—the procedure of trying to unify you with your child—or children, but if you—if the Court determines that you've failed after six months, there is a possibility you could—this case could move toward termination of parental rights? And if you've lost custody of your children, after one—for a full year, then in fact the Court must look at terminating your parental rights; are you aware of all those things.

*A.* Yes.

*Q.* Knowing those things, is it your intention to make an admission today to give the Court jurisdiction?

*A.* Yes.

The court then stated its belief that respondent had made "a knowing and voluntary waiver." Respondent's lawyer and the prosecuting attorney agreed with the court's assessment.

Thereafter, respondent made *unsworn admissions* to several of the allegations in the petition. The court accepted her plea and entered an order taking jurisdiction over the children. The court restored parenting time to respondent, but it did not order that the petition to terminate her parental rights be dismissed. Instead, it stated only that it would "table it" for now.

Respondent was provided with services aimed at reunifying her with the children. She appeared to be benefiting. However, she subsequently failed to protect one of the children from sexual abuse. Petitioner, therefore, filed a supplemental petition seeking termination of her parental rights. Following a hearing on the petition, the trial court found by clear and convincing evidence that termination of respondent's parental rights was warranted under MCL 712A.19b(3)(j). Then, after a best-interests hearing, the court found by a preponderance of the evidence that termination of respondent's parental rights was in the children's best interests. As a result, the court entered an order terminating respondent's parental rights. The court also entered an injunction precluding respondent from having any contact with the children until they reached the age of 18.

## II. ADJUDICATION

### A. STANDARD OF REVIEW

Respondent argues that the trial court's behavior coerced her into entering a plea of admission at the September 16, 2020 pretrial hearing. She contends that, as a result, her plea was not voluntary so the court accepted her plea in violation of MCR 3.971(D). Because she did not

-4-

move to withdraw her plea or otherwise object to the plea procedures in the trial court, this issue is unpreserved. See *In re Pederson*, 331 Mich App 445, 462; 951 NW2d 704 (2020). Unpreserved challenges are reviewed for plain error affecting a respondent's substantial rights. *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). On a review for plain error, the respondent "must establish (1) error occurred; (2) the error was 'plain,' i.e., clear or obvious; and (3) the error affected [the respondent's] substantial rights." *In re Ferranti,* 504 Mich 1, 29; 934 NW2d 610 (2019). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re Utrera*, 281 Mich App at 9.

## B. ANALYSIS

Child protective proceedings have two phases: an adjudicative phase followed by a dispositional phase. *In re Sanders*, 495 Mich 394, 404; 852 NW2d 524 (2014). The court determines whether to exercise jurisdiction over the child during the adjudicative phase. *In re Brock,* 442 Mich 101, 108; 499 NW2d 752 (1993). "To acquire jurisdiction, the factfinder must determine by a preponderance of the evidence" that there is a statutory basis for jurisdiction under MCL 712A.2. *In re Brock*, 442 Mich at 108-109. The necessary fact-finding may be determined in a trial conducted by the court or by a jury. *In re Pederson*, 331 Mich App at 464. Alternatively, a respondent may waive his or her right to trial and admit the allegations of the petition or plead no contest to them. *Id*.

Due process and our court rules require a trial court to advise" a respondent of the rights that will be waived by the respondent's plea "and of the consequences that may flow from it." *In re Ferranti*, 504 Mich at 30. The version of MCR 3.971(B) in effect at the time that respondent entered her plea provided:

> (B) Advice of Rights and Possible Disposition. Before accepting a plea of admission or plea of no contest, the court must advise the respondent on the record or in a writing that is made a part of the file:
>
> (1) of the allegations in the petition;
>
> (2) of the right to an attorney, if respondent is without an attorney;
>
> (3) that, if the court accepts the plea, the respondent will give up the rights to
>
> (a) trial by a judge or trial by a jury,
>
> (b) have the petitioner prove the allegations in the petition by a preponderance of the evidence,
>
> (c) have witnesses against the respondent appear and testify under oath at the trial,
>
> (d) cross-examine witnesses, and

(e) have the court subpoena any witnesses the respondent believes could give testimony in the respondent's favor;

(4) of the consequences of the plea, including that the plea can later be used as evidence in a proceeding to terminate parental rights if the respondent is a parent.

(5) if parental rights are subsequently terminated, the obligation to support the child will continue until a court of competent jurisdiction modifies or terminates the obligation, an order of adoption is entered, or the child is emancipated by operation of law. Failure to provide required notice under this subsection does not affect the obligation imposed by law or otherwise establish a remedy or cause of action on behalf of the parent;

(6) that appellate review is available to challenge any errors in the adjudicatory process, which may be challenged in an appeal from the court's initial order of disposition;

(7) that an indigent respondent is entitled to appointment of an attorney to represent the respondent on any appeal as of right and to the preparation of relevant transcripts; and

(8) the respondent may be barred from challenging the assumption of jurisdiction in an appeal from the order terminating parental rights if they do not timely file an appeal of the initial dispositional order under MCR 3.993(A)(1), 3.993(A)(2), or a delayed appeal under MCR 3.993(C).

In this case, the trial court plainly erred by advising respondent of only one of the rights that she was waiving by entering a plea. Specifically, although the court advised respondent that by pleading she was waiving her right to a trial, see MCR 3.971(B)(3)(a), the court did not advise her that she was also waiving her right to have petitioner prove the allegations in the petition by a preponderance of the evidence, to have the witnesses against her appear and testify under oath, to cross-examine the witnesses, and to have witnesses subpoenaed, see MCR 3.971(B)(3)(b)—(3)(e).

The court also plainly erred by not advising respondent of any of the consequences of her plea. First, the court did not advise her that her plea could later be used as evidence in a proceeding to terminate her parental rights. See MCR 3.971(B)(4). Instead, the court told her that her plea would allow her access to reunification efforts and, if those efforts were unsuccessful, then it might result in the termination of her parental rights. In doing so, the court suggested that if she did not plea, services aimed at reunification would not be available. The court made no effort to advise respondent that, generally, she would have a continuing child-support obligation if her parental rights were terminated. See MCR 3.971(B)(5). Further, the court did not advise respondent that she had a right to appeal the order of adjudication and that if she were indigent she would be entitled to have a lawyer appointed to her to represent her in such an appeal. See MCR 3.971(B)(6) and (5). Finally, the court neglected to warn respondent that her failure to appeal the initial dispositional order might result in her being barred from challenging the assumption of jurisdiction in an appeal from an order terminating her parental rights. See MCR 3.971(B)(6).

The errors in this case are akin to the errors in *In re Ferranti*. In that case, the trial court wholly failed to advise the respondent-parents of the consequences of their pleas and the rights that they were giving up. *In re Ferranti*, 504 Mich at 30. Our Supreme Court determined that the error affected the respondent-parents' substantial rights, reasoning:

> The respondents were deprived of their fundamental right to direct the care, custody, and control over JF based on those invalid pleas. And the invalid pleas relieved the Department of its burden to prove that the respondents were unfit at a jury trial, with all of its due-process protections. See *Sanders*, 495 Mich at 405 (explaining that in an adjudication trial the respondent "is entitled to a jury,. .. the rules of evidence generally apply,. .. and the petitioner has the burden of [proof]"). These constitutional deprivations affected the very framework within which respondents' case proceeded. There was error, it was plain, and it affected the respondents' substantial rights. See [*In re*] *Mitchell*, 485 Mich [922] at 922 [(2009)]; [*In re*] *Hudson*, 483 Mich [928] at 928[; 763 NW2d 618 (2009)].

> Finally, we conclude that the error here seriously affected the fairness, integrity, or public reputation of judicial proceedings. The trial court did not advise the respondents that they were waiving any of the important rights identified in MCR 3.971(B)(3). And it failed to advise the respondents of the consequences of entering their pleas. MCR 3.971(B)(4). This failure resulted in the respondents' constitutionally defective pleas and undermined the foundation of the rest of the proceedings. The defective pleas allowed the state to interfere with and then terminate the respondents' fundamental right to parent their child. Due process requires more: either a plea hearing that comports with due process and the court rule or, if respondents choose, a trial. MCR 3.971; MCR 3.972. [*In re Ferranti*, 504 Mich at 30-31.]

In this case, the trial court failed to advise respondent of the majority of the rights outlined in MCR 3.971(B)(3), of the consequences of her plea as outlined by MCR 3.971(B)(4)—(5), and of her appellate rights and the consequences of failing to timely exercise them as outlined in MCR 3.971(B)(6)—(8). As a result, the trial court effectively tainted the adjudicative stage of the proceeding. And, as in *Ferranti*, that error seriously affected the fairness, integrity, or public reputation of judicial proceedings by allowing the state to interfere with and ultimately terminate respondent's fundamental right to parent her children.

Additionally, given the record in this case, we have serious misgivings as to whether the plea entered by respondent was voluntary. MCR 3.971(D)(1) prohibits the court from accepting a plea of admission "without satisfying itself that the plea is knowingly, understandingly, and voluntarily made." Here, the court asked respondent if she understood "that nobody can force you to make an admission here today" and that her admission was "to be of your own free will." Respondent indicated that she understood. However, the record reflects that when respondent had previously failed to enter a plea to the satisfaction of the trial court, she was immediately punished. She was kicked out of the proceedings and, in her absence, her parenting time was suspended and petitioner was directed by the court to file a petition seeking termination of her parental rights. There is nothing on the record to suggest that the termination petition would be dismissed and her parenting time would be restored even if she chose to exercise her right to an adjudication trial.

Instead, at the time that respondent entered her plea, the only reasonable inference that can be drawn is that she believed the failure to enter a plea to the court's satisfaction would result in the case proceeding on the termination petition and that she would continue to have no parenting time whatsoever with her children. In light of this record, respondent's unsworn statement that she understood that the decision to enter a plea was a decision free of coercion is insufficient to overcome the inference that her plea was not voluntarily because of the trial court's unapologetic and coercive conduct.[3]

Vacated and remanded for further proceedings. We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ Christopher M. Murray
/s/ Stephen L. Borrello

---

[3] Under different circumstances, we would not consider respondent's challenge to the voluntariness of her plea. MCR 3.971(B)(8) provides that a respondent's failure to "timely file an appeal of the initial dispositional order under MCR 3.993(A)(1), 3.993(A)(2), or a delayed appeal under MCR 3.993(C)" may bar the respondent "from challenging the assumption of jurisdiction in an appeal from the order terminating parental rights . . . " In turn, MCR 3.971(C) expressly allows only for a challenge to the assumption of jurisdiction premised upon the court's failure to "properly advise the respondent of their rights to appeal pursuant to subrule (B)(6)—(8)." Here, had the court properly advised respondent of her right to an appeal of the order of adjudication, we would have barred respondent's untimely challenge to the voluntariness of her plea. Respondent's untimely challenge to the order of adjudication is only proper because of the court's failure to properly advise respondent of her appellate rights.