*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* E E SCHALLER-PRATTON, Minor.

UNPUBLISHED
July 25, 2025
12:20 PM

No. 374032
Macomb Circuit Court
Family Division
LC No. 2024-000144-NA

Before: MARIANI, P.J., and MURRAY and TREBILCOCK, JJ.

PER CURIAM.

Respondent appeals by right the trial court's order terminating her parental rights to her minor child, ESP, pursuant to MCL 712A.19b(3)(b)(*i*) (parent's act caused sexual abuse to child and sexual abuse is reasonably likely to happen again), (b)(*ii*) (failure to prevent sexual abuse to child and sexual abuse is reasonably likely to happen again), (b)(*iii*) (nonparent adult's act caused sexual abuse to child and sexual abuse is reasonably likely to happen again), (g) (failure to provide proper care or custody), and (j) (reasonable likelihood of harm if returned to parent). We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner, the Department of Health and Human Services (DHHS), became involved in this case in May 2024 after Children's Protective Services (CPS) received allegations of sexual abuse and sexual exploitation of then-four-year-old ESP and of respondent's then-ten-year-old sister. During its investigation of the allegations, DHHS determined that respondent had taken several sexually-explicit photos and videos of her sister and of ESP and sent them to her boyfriend for the purpose of his sexual gratification. ESP participated in a forensic interview, during which she disclosed that respondent had taken photos and videos of "her privates" on multiple occasions. ESP also disclosed that respondent's boyfriend had digitally penetrated her vagina on at least one occasion and had vaginally, anally, and orally penetrated her with his penis on multiple different occasions. Respondent had also admitted to witnessing her boyfriend sexually abusing ESP on multiple occasions. Shortly thereafter, respondent was arrested and charged in connection with the sexually-explicit photos and videos of her sister and of ESP, and respondent's boyfriend was

-1-

arrested and criminally charged in connection with his sexual abuse of ESP.[1]  Following respondent's arrest, ESP was placed in her father's care.[2]

DHHS subsequently filed a petition in July 2024 requesting that the trial court remove ESP from respondent's care, take jurisdiction over ESP, and terminate respondent's parental rights at initial disposition.  Following a preliminary hearing, the trial court authorized the petition, instructed that ESP remain out of respondent's care and in the care of her father under the supervision of DHHS, and suspended respondent's parenting time.

The trial court conducted a combined adjudication and initial dispositional hearing in December 2024.[3]  Because DHHS petitioned for termination at initial disposition, the initial-dispositional portion of the hearing acted simultaneously as a termination hearing.  At the outset of the hearing, respondent's counsel informed the court that respondent wished to plead no contest to the petition and proceed to a best-interests determination.  Respondent then entered a no-contest plea to the petition and stipulated to each of the statutory grounds for termination alleged in the petition, with the court confirming that respondent understood the various rights she was giving up by doing so.  Pursuant to the agreement of all the parties, the trial court relied on the allegations contained in the petition as a factual basis for the plea.  After reviewing the petition once more, the court accepted respondent's plea and entered an order exercising jurisdiction over ESP, finding that the factual basis for the plea had sufficiently established statutory grounds to exercise jurisdiction over ESP and had established, by clear and convincing evidence, statutory grounds for termination of respondent's parental rights pursuant to MCL 719.19b(3)(b)(*i*), (b)(*ii*), (b)(*iii*), (g), and (j).

The trial court then moved to the best-interests portion of the hearing.  After considering all the evidence and testimony provided by the parties, the court concluded that aggravated circumstances existed and that termination of respondent's parental rights was in ESP's best interests.  The trial court subsequently issued an order terminating respondent's parental rights as previously described.  This appeal followed.

## II.  TERMINATION AT INITIAL DISPOSITION

On appeal, respondent challenges the trial court's decision to terminate her parental rights at initial disposition.  Specifically, respondent argues that (1) the court erred by finding that aggravated circumstances existed such that the court could terminate her parental rights at initial disposition, and (2) the court clearly erred by finding that termination of her parental rights at initial disposition was in ESP's best interests.

### A.  STANDARDS OF REVIEW

---

[1] Respondent was housed in the county jail awaiting disposition of these criminal charges throughout the remainder of the instant child-protective proceedings.

[2] ESP's father was not a respondent in this case.

[3] Respondent's criminal proceedings were still in "the pretrial phase" at the time of the hearing.

"We review for clear error a trial court's factual findings in child protective proceedings." *In re Barber/Espinoza*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 369359); slip op at 2. "A finding of fact is clearly erroneous when the reviewing court has a definite and firm conviction that a mistake was made." *Id.* We give deference "to the special ability of the trial court to judge the credibility of witnesses." *In re Pederson*, 331 Mich App 445, 472; 951 NW2d 704 (2020) (quotation marks and citation omitted). We review the trial court's application of statutes and court rules de novo. *In re Walters*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 369318); slip op at 3.

Because, however, respondent never raised before the trial court her claim of error regarding the court's aggravated-circumstances finding, that issue is unpreserved and reviewed for plain error affecting substantial rights. See *Barber/Espinoza*, ___ Mich App at ___; slip op at 3. To obtain appellate relief under the plain-error standard of review, a respondent first must show: (1) an error occurred, (2) the error was clear or obvious, and (3) the error affected substantial rights. *Walters*, ___ Mich App at ___; slip op at 7; *Pederson*, 331 Mich App at 463. "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re MJC*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 365616); slip op at 2 (quotation marks and citation omitted). After the respondent has satisfied these requirements, "an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted when the plain, forfeited error seriously affected the fairness, integrity or public reputation of judicial proceedings." *Pederson*, 331 Mich App at 463 (quotation marks, citations, and ellipses omitted).

## B. AGGRAVATED CIRCUMSTANCES

In general, when a child is removed from a parent's custody, DHHS must make reasonable efforts toward reunification, but it need not do so under certain, limited circumstances. *Walters*, ___ Mich App at ___; slip op at 3-4. Those circumstances include when "[t]here is a judicial determination that the parent has subjected the child to aggravated circumstances as provided in [MCL 722.638(1) and (2)]." MCL 712A.19a(2)(a). Relevant to this case, such aggravated circumstances exist, and DHHS must request termination at initial disposition in its petition, when DHHS "determines that . . . a person who is 18 years of age or older and who resides for any length of time in the child's home, has abused the child" and the abuse includes "[c]riminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate," MCL 722.638(1)(a)(*ii*), and the respondent-parent is "suspected of placing the child at an unreasonable risk of harm due to the parent's failure to take reasonable steps to intervene to eliminate that risk," MCL 722.638(2). See also MCL 712A.19a(2)(a); *Barber/Espinoza*, ___ Mich App at ___; slip op at 7 (noting that "the related but distinct requirements of MCL 722.638(1) and (2) . . . must be separately satisfied to establish an aggravating circumstance warranting termination at the initial disposition"). "Under MCL 712A.19a(2)(a), there must be a judicial determination that the parent has subjected the child to aggravated circumstances before [DHHS] is excused from making reasonable efforts." *In re Smith-Taylor*, 509 Mich 935, 935 (2022) (quotation marks omitted). The trial court must articulate its "factual finding based on clear and convincing evidence that

aggravated circumstances exist such that services are not required." *In re Simonetta*, 507 Mich 943, 943 (2021). See also MCL 712A.19a(2)(a); MCR 3.977(E), (I).[4]

During its oral recitation of its findings at the termination hearing, the trial court in this case found that "[t]he acts that were stipulated to through the prior testimony and the pleadings in the file all put forth the aggravated circumstances of sexual abuse [by respondent's boyfriend] and sexually based photographs which were taken by" respondent. As discussed, the allegations in the petition served as the factual basis for respondent's plea, and those allegations detailed the sexual abuse of ESP by respondent's boyfriend, respondent's knowledge of that sexual abuse and failure to intervene, and respondent's sexual exploitation of ESP. It is thus clear from the record that the court made the judicial determination that aggravated circumstances existed such that reasonable efforts were not required. See *Simonetta*, 507 Mich at 943; *Smith-Taylor*, 509 Mich at 935.

We also see no error in the trial court's aggravated-circumstances finding. The allegations in the petition, as well as testimony by both the CPS investigator and the detective involved in the criminal investigation of the sexual-abuse and sexual-exploitation allegations, established that respondent's boyfriend, who was undisputedly older than 18 years of age, sexually penetrated ESP on multiple different occasions. During a forensic interview, ESP provided detailed descriptions of multiple instances of sexual penetration by respondent's boyfriend over a period of months, and respondent's boyfriend admitted to the investigating detective that he had sexually penetrated ESP on at least one occasion. Respondent also admitted to the detective that her boyfriend expressly told her that he had sexually penetrated ESP on at least one occasion and that she had observed her boyfriend sexually abusing ESP on at least three occasions, one or more of which involved sexual penetration, but did nothing to stop the abuse. There was also testimony that respondent, respondent's boyfriend, and ESP all lived together for a few months and that at least three instances of sexual abuse—the three observed by respondent—occurred while they lived together. Such allegations plainly constitute an aggravated circumstance warranting termination at initial disposition. See MCL 712A.19a(2); MCL 722.638(1)(a)(*ii*) and (2); *Barber/Espinoza*, ___ Mich App at ___; slip op at 7. Although respondent's sexual exploitation of ESP may not have been an aggravated circumstance in itself, see *Barber/Espinoza*, ___ Mich App at ___; slip op at 4-5, 7-8, it did not need to be, as the sexual abuse by respondent's boyfriend and respondent's failure to intervene satisfied that requirement regardless, MCL 712A.19a(2); MCL 722.638(1)(a)(*ii*) and (2).

Respondent argues that the trial court's decision to terminate her parental rights at initial disposition was premature for two reasons: (1) no reasonable efforts toward reunification were made, so there was no way to know if respondent could provide proper care and custody for ESP or to prove by clear and convincing evidence that she could not; and (2) the criminal charges against her related to the sexually-explicit photos and videos that she took of her sister and of ESP were still pending at the time of termination. Neither argument has merit.

---

[4] "MCR 3.977(E) provides the procedural requirements for terminating parental rights at an initial dispositional hearing." *In re Utrera*, 281 Mich App 1, 16; 761 NW2d 253 (2008). Respondent makes no argument on appeal that the trial court failed to comply with the procedural requirements set forth in MCR 3.977(E).

First, our Legislature has made clear that when aggravated circumstances are found to exist, as they were here, DHHS is no longer obligated to provide services and make reasonable efforts toward reunification. MCL 712A.19a(2)(a); *Smith-Taylor*, 509 Mich at 935; *Simonetta*, 507 Mich at 943. Nothing in the record indicates that DHHS ceased those efforts prematurely in this case.[5] And second, nothing precludes a court from finding that aggravated circumstances exist and terminating parental rights at initial disposition when there are criminal charges still pending against the respondent-parent. Nor is there any basis to assign error to the trial court for doing so here. Respondent argues that the outcome of her criminal proceedings might impact the court's aggravated-circumstances finding, but she identifies nothing in the record to support this claim. Indeed, the repeated sexual abuse of ESP by respondent's boyfriend and respondent's failure to take action in response to it—which, as discussed, provides the requisite aggravated circumstance in this case—is not the subject of respondent's criminal charges, which instead pertain to respondent's act of taking sexually-explicit photos and videos of her sister and of ESP and sending them to her boyfriend. Respondent fails to show, and we fail to see, how the adjudication of those charges might meaningfully affect or undermine the court's finding of aggravated circumstances in this case.

Furthermore, the focus of child-protective proceedings is not on the guilt or innocence of a respondent-parent, but rather on the protection and well-being of the child. *In re Richardson*, 329 Mich App 232, 254; 961 NW2d 499 (2019) (emphasizing that "the purpose of child protective proceedings is *the protection of the child* rather than to determine a defendant's guilt or innocence") (quotation marks and citation omitted). For reasons already discussed and reasons discussed more thoroughly *infra*, there is ample record evidence to support the conclusion that aggravated circumstances were present in this case and warranted proceeding to termination at initial disposition, regardless of the outcome of respondent's criminal proceedings.

In sum, we see no error warranting relief in the trial court's finding that aggravated circumstances existed in this case. See *Walters*, ___ Mich App at ___; slip op at 2; *Pederson*, 331 Mich App at 463.

### C. BEST-INTERESTS DETERMINATION

We also see no error in the trial court's determination that termination of respondent's parental rights was in ESP's best interests. "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). When determining whether termination is in the best interests of the child, the court should place its "focus on the child rather than the parent." *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016). "The trial court should weigh all the evidence available to determine the child's best interests," and it should consider a variety of factors, including "the child's bond to the parent; the parent's parenting ability; the child's need for permanency, stability, and finality; and the advantages of a foster home over the parent's home."

---

[5] To the extent that respondent suggests that there was not clear and convincing evidence to support the cited statutory grounds for termination, that is belied by both her stipulation to such grounds and the record, which was replete with evidence supporting these grounds.

*In re Simpson*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 368248); slip op at 5 (quotation marks, citations, and alterations omitted). "Other factors that the court may consider include the parent's history, the parent's psychological evaluation, the age of the child, and a parent's substance-abuse history." *MJC*, ___ Mich App at ___; slip op at 10 (citations omitted). The court may also consider, among other things, "the child's well-being while in care," *id*. (quotation marks, citation, and alteration omitted), as well as "the likelihood that the child could be returned to the parents' home within the foreseeable future, if at all," *In re CJM*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 367565); slip op at 4 (quotation marks and citation omitted).

Respondent primarily argues that the trial court gave inadequate weight to the parent-child bond when making its best-interests determination. The record clearly reflects, however, that the trial court duly considered this factor. The trial court acknowledged that "[t]here [wa]s a bond between" respondent and ESP and that respondent "clearly love[d]" ESP, but the court nonetheless found that termination was in ESP's best interests because a "continued relationship" between respondent and ESP "place[d] [ESP] at risk of harm" and "would open [ESP] up to continuing abuse any time that there would be potential access." The court emphasized that respondent "d[id] not appreciate the depravity of the underlying acts" of sexual abuse and sexual exploitation that had initiated the proceedings, had shown no "insight into the physical and emotional harm that she has caused [ESP] through her actions," and had shown "no insight to be able to protect [ESP] in the future." The court further explained that respondent "remain[ed] in . . . jail with pending criminal charges" related to the sexually-explicit photos and videos of her sister and of ESP and that, in light of the evidence presented, there was "no indication" that respondent would "be able to address the underlying causation to the . . . exploitation at any time in the reasonable future."

The record is consistent with these findings. The investigating detective testified that respondent had admitted to him that she had observed her boyfriend sexually abusing ESP on at least three separate occasions while they lived together but did nothing to stop the abuse at that time or to prevent the abuse from occurring again in the future. Respondent also admitted to the detective that her boyfriend had expressly told her that he had forced ESP to perform fellatio on him while they lived together but that she continued to live with her boyfriend and the sexual abuse of ESP continued. Respondent further admitted to the detective that, despite being fully aware of her boyfriend's sexual abuse of ESP, she allowed her boyfriend to drive around alone with ESP for approximately one hour, during which time he sexually abused ESP again. The detective also testified that respondent's boyfriend admitted to the various instances of sexual abuse and that both respondent and her boyfriend admitted that respondent had sent several sexually-explicit photographs and videos of ESP to him at his request so that he could sexually gratify himself.

Additionally, the CPS investigator acknowledged during her testimony that there was a bond between respondent and ESP, but she emphasized that this bond was vastly outweighed by the sexual abuse and sexual exploitation that ESP had suffered while in respondent's care and by the significant risk of continued sexual exploitation and abuse that ESP faced if returned to respondent's care. Two CPS investigators testified that there were significant concerns regarding respondent's "decision making" as it related to ESP's well-being, and one investigator testified that she did not believe that there were any "additional services or things [respondent] could do to rectify her decision making in regards to" ESP because she had consistently demonstrated that she

could not make proper decisions concerning ESP's care even when presented with all of the relevant information.

Respondent maintains that "[i]t would have been prudent for the trial court to wait until resolution of the criminal matter before making [its] decision." According to respondent, the outcome in her criminal proceedings may ultimately show that she is not guilty because she acted under duress due to fear of her boyfriend or because she was justified in taking the photos to document potential sexual abuse by ESP's father. Both of these claims regarding her conduct were raised before the trial court and amply discussed by testifying witnesses during the termination hearing, and the record presently before us does not particularly support them. Nor does respondent identify what more about them would be developed through the criminal proceedings. And in any event, again, the focus in this child-protective proceeding is not on respondent's guilt or innocence as a criminal defendant, but on ESP's well-being and best interests. See *Richardson*, 329 Mich App at 254. Regardless of whether respondent's actions are ultimately found to be criminal beyond a reasonable doubt, there was well beyond a preponderance of the evidence that it was in ESP's best interests for respondent's parental rights to be terminated. See *Moss*, 301 Mich App at 90.

In sum, the record reflects that the trial court properly weighed all the evidence available to it at the time that it made its best-interests determination, *Simpson*, ___ Mich App at ___; slip op at 5, and we see no clear error in its findings, *id*. at ___; slip op at 3.

Affirmed.

/s/ Philip P. Mariani
/s/ Christopher M. Murray
/s/ Christopher M. Trebilcock