*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* DIRHEIMER/RUST, Minors.

UNPUBLISHED
August 12, 2025
12:23 PM

No. 373027
Muskegon Circuit Court
Family Division
LC No. 16-004836-NA

Before: O'BRIEN, P.J., and BOONSTRA and WALLACE, JJ.

PER CURIAM.

In this interlocutory appeal, respondent-mother[1] appeals by leave granted[2] the trial court's order in these child protective proceedings changing the goal from reunification to a juvenile guardianship for her children, OD and SD. We vacate the portion of the trial court's order changing the goal from reunification to guardianship for OD and SD, and remand this case for further proceedings before a different judge.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In September 2016, OD and SD's father died of an overdose while the children were present, and respondent-mother admitted to responding police that she had used heroin that day. This led to the removal of the children by petitioner, the Department of Health and Human Services (DHHS). The children were returned to respondent-mother in December 2019 and the case was closed in 2020. However, incidents in 2023 involving domestic violence, homelessness, and substance abuse again led to the children's removal and new child protective proceedings. In April 2023, respondent-father allegedly pushed respondent-mother while the children were present,

---

[1] The proceedings below involve respondent-mother's three minor children: OD, SD, and WR. WR's father is a respondent in the proceedings below; however, he is not a party to this interlocutory appeal, which solely challenges the trial court's order changing the goal for OD and SD.

[2] See *In re Dirheimer/Rust Minors*, unpublished order of the Court of Appeals, entered February 19, 2025 (Docket No. 373027).

resulting in police involvement, but no arrests were made. In June 2023, police responded twice to reports that respondent-mother had left children alone in a car outside of a local business. The second time, police found with narcotic paraphernalia in respondent-mother's car. In July 2023, she was arrested on outstanding warrants and admitted to using methamphetamine and heroin. Consequently, the DHHS petitioned for the removal of the children because of substance abuse, criminality, and domestic violence. Respondent-mother pleaded to the allegations in the petition, and the trial court took jurisdiction over the children. The children were placed in non-relative foster care. Respondent-mother was ordered to comply with a case service plan that included individual counseling, substance abuse counseling, random drug screens, and obtaining stable employment and housing.

After a dispositional-review hearing in July 2024, the children's lawyer guardian ad litem (LGAL) informed the trial court that OD wanted to speak to the court "on his own just so you could hear from him how he feels about permanency." At the conclusion of the hearing, the trial court stated that it would interview OD after the hearing; no party objected to the interview. At the next dispositional review hearing in October 2024, the trial court changed the goal from reunification to juvenile guardianship for SD and OD, stating in relevant part:

> [WR] will continue in the placement with his parents.
>
> I am, however, going to order the Department of Health and Human Services, there's going to be a goal change, a goal change for [OD] and [SD], and the goal change is to juvenile guardianship. These parents are licensed already, and I'm ordering the Department of Health and Human Services to begin the JG petition.
>
> If that's not followed through with—I'm going to do a shortened review. If that's not followed through with, I'll hold them in contempt. So there needs to be some discussion with what that means.
>
> The children will remain in the foster placement that they're in.

The court ordered the DHHS to begin a juvenile-guardianship petition. When counsel for the DHHS asked whether a dual goal of juvenile guardianship and reunification could be considered, the trial court stated as follows:

> No. This case is over a year old. Well, this case that we opened in 2023 is a year old. This case opened in 2023 because of substance use, housing, parenting.
>
> I understand that mom has had employment, not steady employment for a year. Not steady employment at one place for a year. It's Burger King; it's pizza; it's this; it's Door Dash. I mean, it's just all this.
>
> And I understand that rent is up to, you know, that rent has been paid, but rent was paid by DHHS up until May or June. So this is October 1. I don't—You know, I would like to see a little more consistency with somebody else paying the rent, you know, to say that we have consistent and appropriate housing.

You know, this is our third—Well, this is a 2016 case. I mean, there's been lots and lots and lots of services in this case and, you know, we've got some older children. I don't think they all need to be treated the same. I think it's time for those children to have a little bit of input as to where they want to be.

So we will create the order, and we will have a shortened review, and that's what I expect the Department of Health and Human Services to do.

After the hearing, the trial court entered an order indicating that it had found that returning SD and OD to respondent-mother would cause a substantial risk of harm to the children's life, physical health, or mental well-being, and that appointment of a juvenile guardian was in SD's and OD's best interests. This appeal followed.[3]

## II. STANDARD OF REVIEW

Generally, to preserve an issue for appellate review, a respondent must raise the issue in the trial court. *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). Respondent-mother did not object to the trial court's *in camera* interview of OD; therefore, the issue was not preserved for appeal, and our review is for plain error affecting substantial rights. *In re MJC*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 365616); slip op at 2; *In re HRC*, 286 Mich App 444, 450; 781 NW2d 105 (2009). To establish plain error, the defendant has the burden to show (1) "error"; (2) that the error was "plain," meaning "clear or obvious"; (3) and that the error affected substantial rights or caused prejudice, meaning "that the error affected the outcome of the lower court proceedings." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

## III. ANALYSIS

Respondent-mother argues that the trial court erred by conducting an *in camera* interview of one of her children and that the error deprived respondent-mother of her right to due process of law. We agree.

"An [*in camera*] interview is an ex parte communication that occurs off the record in a judge's chambers and in the absence of the other interested parties and their attorneys." *HRC*, 286 Mich App at 451, citing Black's Law Dictionary (8th ed). "Generally, such ex parte communications are not permitted except as provided by law." *Id.* at 451. In a child custody dispute, the trial court is authorized by statute to interview a child *in camera* to determine the child's preference regarding which parent to live with; however, "there is no authority that permits a trial court presiding over a juvenile matter to conduct in camera interviews, on any subject whatsoever, with the children." *HRC*, 286 Mich App at 453.

---

[3] This Court ordered the trial court not to an enter an order appointing a juvenile guardian for OD and SD until respondent-mother's appeal is resolved or according to further order of this Court. See *In re Dirheimer/Rust Minors*, unpublished order of the Court of Appeals, entered March 19, 2025 (Docket No. 373027).

We conclude that the trial court plainly erred by conducting an *in camera* interview of a child in a child protective proceeding. Indeed, petitioner concedes as much. Yet petitioner asserts that respondent-mother "arguably waived" any argument regarding the interview by indicating acceptance at the hearing. We disagree. "Waiver is the intentional relinquishment or abandonment of a known right." *In re Ferranti*, 504 Mich 1,33; 934 NW2d 610 (2019) (quotation marks and citation omitted). After the trial court indicated that it would interview OD, the trial court stated that it "saw heads bobbing." Petitioner suggests that this demonstrates "approval by the parties" of the court's decision to interview OD. However, between the moment when the court stated that it would conduct the interview and when the court "saw heads bobbing," the trial court made further rulings regarding parenting time and giving the DHHS discretion to return one of the children to the home. Under these circumstances, with the lack of affirmative statements approving the interview on the record, we conclude that respondent-mother merely forfeited her challenge to the trial court's action, rather than waived it. See *id*.

Petitioner also argues that, although plain error occurred, respondent-mother cannot establish prejudice. However, this Court held in *HRC* that "the use of unrecorded, *in camera* interviews in termination proceedings violates parents' due process rights," and that the characteristics of the *in camera* interview present a substantial risk of erroneous deprivation of a parent's fundamental liberty interest in the care and custody of their children. *HRC*, 286 Mich App at 455. This Court noted several due-process concerns, such as the lack of opportunity "for the opposing party to cross-examine or impeach the witness," the inability to "present contradictory evidence," and the absence of an appellate record to "permit a party to challenge the evidence." *Id*. at 452. Therefore, this Court held in *HRC* that "the trial court's decision to interview the children in camera fundamentally and seriously affected the basic fairness and integrity of the proceedings below," requiring that the trial court's decision be vacated and the assignment of a different judge on remand. *Id*. at 457.

In *Ferranti*, 504 Mich at 34-35, our Supreme Court agreed with this Court's holding in *HRC* that a trial court may not conduct *in camera* interviews of the children during a termination of parental rights case. The Court held that the interest in sparing a child the discomfort of testifying on the record in the presence of the parties and their counsel "does not outweigh the respondents' interest in having any testimony on the record, given 'the fundamental parental rights involved in termination proceedings, the risk of an erroneous deprivation of those rights given the in camera procedure, and the fact that the information is otherwise easily obtained.'" *Id*. at 35, quoting *HRC*, 286 Mich App at 456. The *Ferranti* Court also held the case should be assigned to a different judge on remand. *Id.* at 35.

In light of such clear precedent, we conclude that the trial court's error impacted the basic fairness and integrity of the proceedings below and impaired respondent-mother's fundamental liberty interest in the care and custody of her children at stake in these proceedings. Respondent-mother "had no opportunity to learn what testimony was elicited or to counter information obtained, and no way of knowing how that information may have influenced the court's decision." *HRC*, 286 Mich App at 456-457. Because it is unknown what information the trial court obtained from OD, it cannot be determined "whether the trial court would be able to set aside any information obtained in making a new determination." *Id*. at 457.

As noted by our Supreme Court in *Ferranti*, "the Court of Appeals in *HRC*, reviewed for plain error" and "the panel's analysis did not depend on the respondent-parent showing outcome-determinative error, presumably because the nature of the trial court's error makes that impossible." *Ferranti*, 504 Mich at 35 n 17. The same rationale applies in this case; the very nature of the error "resulted in an inadequate record for meaningful judicial review at the appellate level" and therefore fundamentally affected the fairness and integrity of the proceeding below, regardless of respondent-mother's ability to show outcome-determinative error. *HRC*, 286 Mich at 457.

Accordingly, we hold that the trial court plainly erred by conducting an *in camera* interview of OD, that the error affected substantial rights or caused prejudice, and that remand is required before a different trial judge. In light of this holding, we need not address respondent-mother's arguments that the trial court did not make proper findings on the record before changing the goal from reunification to a juvenile guardianship, and that the goal change was not in her children's best interests.

Vacated and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Colleen A. O'Brien
/s/ Mark T. Boonstra
/s/ Randy J. Wallace